J.H., Movant,

v.

COMMONWEALTH of Kentucky, CABINET FOR HUMAN RESOURCES, C.C.H., An Infant, and H.T.H., An Infant, Respondents.

No. 88–CA–399–D.

Court of Appeals of Kentucky.

Dec. 29, 1988.

Mary Monica Miner, Appalachian Research and Defense Fund of Kentucky, Inc., Harlan, for movant.

Frederic J. Cowan, Atty. Gen., Frankfort, William Neil Ward, Asst. County Atty., Pineville, for respondent, Com. of Kentucky, Cabinet for Human Resources.

Frank A. Atkins, Williamsburg, for respondents, C.C.H., an Infant and H.T.H., an Infant.

Before COMBS, GUDGEL and LESTER, JJ.

COMBS, Judge.

This appeal is from the Bell District Court and it concerns the removal of two children from the custody of their natural parent and movant, J.H., by the respondent Commonwealth of Kentucky. The children were adjudged to be dependent, neglected or abused by the Bell District Court. That judgment was upheld by the Bell Circuit Court.

There is a lengthy history of state involvement with the family. The movant and his estranged wife gave birth to two boys during their marriage; C.H., age five, and T.H., age two. The couple separated in November of 1986, at which time the movant's wife left him and took their sons with her. Kentucky's Cabinet for Human Resources was already involved with the children by then. The movant petitioned the Bell Circuit Court for temporary custody of his sons and the petition was granted.

The event which led to the state removal of both children from their father occurred on May 27, 1987, and involved only the older child, C.H. He had walked about one hundred and fifty yards from home and been kicked in the head by a horse. The child was rushed to a hospital where he was diagnosed as having suffered a fractured skull. The movant stayed beside C.H. during the hospitalization, and T.H. stayed at home with the movant's mother.

The Commonwealth instigated proceedings in district court to remove both children from the custody of the movant. The court ordered that the children be committed to the care, custody and control of the Cabinet for Human Resources. The movant appealed to the circuit court and it dismissed the appeal. We granted discretionary review.

The evidence presented below was provided through five social workers, a police officer, the movant's estranged wife, and his mother.

Social workers Ron Redmond and Karen Jones visited the movant's mother's home on separate occasions during the time when movant was with C.H. at the hospital. Neither worker found intervention necessary for the sake of the younger child. Movant's mother is blind, but Redmond testified that he did not regard her blindness as an impediment to her ability to care for the children, and he himself was unable to even detect her blindness after he had visited her several times. He believed T.H. was receiving proper care from his grandmother. He testified that he had visited the family fifteen times when it resided with the grandmother, and never saw any need for removal of either child.

The hospital's social worker, Jane Harris, testified that she was concerned about a lack of interaction between movant and C.H. at the hospital. However, this observation is incompatible with her further testimony indicating that movant obviously cared enough for C.H.'s well-being to bathe the child and give him a haircut. The child was said to have cried on these occasions, but the record is silent as to why.

Social worker Noble York filed the petitions that led to removal. Redmond by that time had discontinued his involvement with the family. York interviewed the grandmother once, on the night of the accident. He interviewed the movant and testified that his findings included that the movant was attending to T.H., and had understood that C.H. was visiting with a friend at the time of the accident with the horse. York testified that he had substan-

tiated in his report that C.H.'s injury "was an accident."

Social worker, Sara Risner, investigated the family in 1986, prior to movant's separation from his wife, and long before C.H.'s accident. She testified that at that time C.H. had bruises. Movant explained that C.H. had fallen while in the care of his uncle. Risner concluded there was no uncle, but her testimony is dubious at best because the record contains evidence that both movant and his wife have at least one brother.

Social worker Karen Jones testified that in the middle of 1986, the family had been evicted and was temporarily without adequate shelter.

Middlesboro Police Officer Garrett Russell testified that a year and a half before C.H.'s accident he had seen C.H. unattended in Middlesboro, and returned the child to his parents. The officer saw movant on the couch, his wife in bed, an open pill bottle on the television set, and dirty dishes. He testified that one other time he saw C.H. unattended outdoors.

Movant's wife testified that during their marriage C.H. was sometimes left unattended.

Movant moved to dismiss the petitions at the close of the Commonwealth's evidence on grounds of insufficient evidence of dependency, neglect or abuse as to C.H., and total lack of evidence as to dependency, neglect or abuse as to T.H. Both motions were denied. The court adjudged the children "dependent, neglected or abused." The court instructed the Commonwealth to consider the grandmother's home as a relative placement alternative to foster care. However, at the dispositional hearing the Commonwealth failed to produce any home study of the grandmother's home as had been ordered, and called no witnesses.

Kentucky's Juvenile Code provides at KRS 620.100(3) that the Commonwealth bear the burden of proving dependency, neglect or abuse of a child by a preponderance of the evidence.

An "abused or neglected child" is defined by KRS 600.020(1) which in pertinent part reads:

"Abused or neglected child" means a child whose health or welfare is harmed or threatened with harm when his parent ... inflicts or allows to be inflicted upon the child physical or emotional injury by other than accidental means; creates or allows to be created a risk of physical or emotional injury to the child by other than accidental means ...

A "dependent child" is defined by KRS 600.020(15) which in pertinent part reads:

"Dependent child" means any child, other than an abused or neglected child, who is under improper care, custody, control, or guardianship that is not due to an intentional act of the parent ...

■ Our review of the district court's judgment as to C.H. is impossible. The juvenile petitions filed in the interest of both children are preprinted forms that were supplied by the Administrative Office of the Courts (AOC) in 1984. Then, the former law on the subject was in effect, KRS Chapter 208, and all that can be gleaned from the forms is that the children were allegedly "dependent, neglected or abused."

The dispositional form used in C.H.'s and T.H.'s cases was also supplied by the AOC (AOC–JV–20; G–87). It pertains to the new Juvenile Code but is not entirely faithful to the statutory scheme. That form simply allows the courts to indicate by filling one of two blank boxes whether the child "is [or] is not a dependent, neglected or abused child...." As has already been seen in this opinion, the legislative definition of a "dependent child" explicitly means that he or she is *not* an "abused or neglected child." It is statutorily forbidden for any one child to be adjudged both dependent *and* abused or neglected in the same disposition, but this is exactly what the form allows. This paradox could be resolved in two ways. A piecemeal solution would be each district judge with a stroke of the pen obliterating either "dependent" or "neglected or abused" whenever adjudicating a child to be one or the other. A comprehensive solution would be issuance from the AOC of a new form that comports

with the statutory definitions by removing the equivocation. Nevertheless, in the case now before us we are stuck with the record wherein the district judge purportedly adjudicated the children both dependent and neglected or abused.

The district courts are the finders of fact, not the Court of Appeals, and we cannot on appeal presume to know what a district judge had in mind at trial. We therefore find ourselves in a position of not being able to affirm or reverse the lower court as to C.H. because we cannot know what its judgment was. However, we do know that according to statutes it cannot be what it appears to be. Our only viable option is to vacate the impermissible disposition as to C.H., and remand the case for the district court to find as a matter of fact whether it adjudicates C.H. as a "dependent child" under KRS 600.020(15) or as an "abused or neglected child" under KRS 600.020(1). The trial court upon remand should also receive into evidence the home study evaluation of movant's mother's home which it had ordered, and for the purpose of placement of C.H. consider whether her home is a suitable less restrictive alternative to foster care. KRS 600.-010(2)(c).

■ We now turn to the court's disposition of the younger child, T.H. Here again the trial court adjudicated T.H. a "dependent, neglected or abused child," in violation of the Juvenile Code. However, this problem which proved to be intractable in C.H.'s case, solves itself in T.H.'s case simply because there was no evidence presented that T.H. was either dependent, or, neglected or abused.

The district judge even made the following remark as to the evidence relating to T.H.:

> I'll state for the record, for purposes of your appeal should you end up prosecuting one, I'll state that there's really nothing in the record to base the court's findings on because there has been no evidence in the record.

Social worker Karen Jones testified that it was the policy in her office to seek removal of all the children in the home if they seek to remove one.

The Commonwealth argues that it proved a "neglectful situation" in movant's household and therefore it is safe to say that the younger child was neglected. Aside from the fact that we again do not even know if neglect was the dispositional finding of the district court, the position of the Commonwealth is flawed for various other reasons.

First of all, the evidence of neglect dealt almost exclusively with incidents involving C.H., and all of those with the exception of the injury to the child's head were remote in time and not considered to be sufficient cause to start removal proceedings. Thus a pervasive "neglectful situation" was hardly shown.

■ Yet there are other reasons why we can in no way, shape, form or fashion subscribe to the Commonwealth's position that from evidence proving dependency, or, abuse or neglect, of one child, the same condition may be inferred about another child who lives in the same household. This reasoning runs against the grain of not only the Juvenile Code, but also the notion of constitutional due process of law and familial realities as well.

KRS 620.080, governing removal hearings, uses the word "child." KRS 620.-100(3) burdens the Commonwealth with producing proof of dependency, or neglect or abuse of a "child." The legislature intended the Juvenile Code to prevent removal of children except when absolutely necessary. KRS 600.010(2)(c). It is also the expressed policy of the legislature to provide judicial procedures in which the rights and interests of all parties, including the parents, are recognized. KRS 600.-010(2)(e).

Due process of law attaches to a state's proceeding which interferes with the liberty interest of natural parents in the custody of their children. *Quilloin v. Walcott,* 434 U.S. 246, 255, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), *Wisconsin v. Yoder,* 406 U.S. 205, 231–233, 92 S.Ct. 1526, 1541, 1542, 32 L.Ed.2d 15 (1972). The process that is due includes preponderant proof that *each* child sought to be removed is dependent, or, neglected or abused.

An additional consideration not contemplated by the Commonwealth's position is that there always will be many multi-child households where one child is a newborn or a toddler, with a brother or sister who is well into grade school. Also, there always will be multi-child households where one child is physically or mentally handicapped with a brother or sister who is physically and mentally healthy. These families unquestionably present situations where the lack of that utmost degree of attentiveness, care and control appropriate and necessary for the much younger or afflicted child does not mean that the older or healthy child is also dependent, or, neglected or abused. The Commonwealth is constitutionally, statutorily and realistically prohibited from taking its evidence and inferentially leapfrogging from child to child in its efforts to remove them from their natural parents.

The judgment of the Bell District Court is hereby vacated as to C.H., and that cause remanded for further proceedings consistent with this opinion. The judgment of the Bell District Court is hereby reversed as to T.H.

LESTER, J., concurs.

GUDGEL, J., concurs in result.