**Z.T., Father of the Child,
M.T., Appellant,**

v.

**M.T., the Child; A.T., Mother of the Child; Kenton County Attorney; and Cabinet for Health and Family Services, Appellees.**

**No. 2007–CA–001444–ME.**

Court of Appeals of Kentucky.

June 27, 2008.

Robert E. Bathalter, Alexandria, KY, for appellant.

George A. Thompson, Assistant Kenton County Attorney, Covington, KY, for appellee.

Before KELLER and THOMPSON, Judges; GRAVES,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

This case arises from a dependency, neglect, and abuse petition filed pursuant to KRS Chapter 620. *et. seq.*, alleging that Z.T., (father) sexually abused his eldest daughter, M.T. As a result, a finding of abuse was found and the Kenton Family Court ordered the placement of M.T. and her three younger siblings in the custody of their mother, A.T., and that the father have no contact with the children.

Prior to August 23, 2005, the maternal grandparents had taken M.T. to the hospital where she was examined for sexual abuse which was not substantiated. On August 23, 2005, the mother and her parents took then six-year old M.T. and her sibling, K.T., then five years old, to Children's Hospital to be physically examined and interviewed for evidence of sexual abuse. M.T. told the interviewer that she awoke one evening and her mother placed her into her parents' bed. She testified that she was suddenly awakened when her father touched her "pee-pee." She further told the interviewer that her father previously put "five fingers" into her vagina. The younger child denied any abuse by the father. There was no physical evidence that either child had been abused.

The dependency, neglect and abuse petition was filed in the Kenton District Court on November 1, 2005, and temporary orders were issued requiring that the father have no contact with the four children.

On January 10, 2006, the mother and her parents returned K.T. to the Children's Hospital for a second interview. At that time, she told the interviewer that she

had been sexually abused and had witnessed her father sexually abuse her two sisters and brother. Fifteen days later, the father was charged with four counts of sexual abuse in the first degree.

Subsequently, the Kenton District Court conducted an adjudication hearing on the abuse petition. The court permitted the mother to admit the children were abused and based on that admission, found that the children were abused. The father appealed to the circuit court on the basis that the findings of abuse could not be premised solely on the admissions of the mother. Eventually, the County Attorney agreed to withdraw the mother's admissions and a second adjudication hearing was ordered.

The hearing was delayed pending the outcome of the father's criminal charges. Ultimately, the father was found not guilty on the four sexual abuse charges.

A second adjudication hearing was held and the court again found that M.T. had been sexually abused. The allegations concerning the remaining three children were dismissed. Subsequently, the case was assigned to the newly formed Kenton Family Court which, based on the district court's finding of abuse against M.T., ordered that the four children be placed in the mother's custody and that the father have no contact with the children. This appeal followed.

We preface our discussion of the errors alleged with the accepted proposition that a parent has a basic and fundamental right to be free from governmental interference when parenting a child. As the United States Supreme Court recognized the right of the parent to parent a child cannot be easily denied.

---

1.  Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

34

The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer,* 455 U.S. 745, 753–754, 102 S.Ct. 1388, 1394–1395, 71 L.Ed.2d 599 (1982) (internal citations and footnotes omitted). Although a dependency action does not terminate parental rights, it is an interference with the parental relationship and often a precursor to the permanent termination of parental rights. The parents must, therefore, be afforded the same fundamentally fair procedures. Because we are convinced that the errors committed were such that the proceedings were not fundamentally fair to the father, we reverse and remand the case for further proceedings.

The father asserts several errors occurred at the second adjudication hearing. We first address the presence of M.T.'s mother, the mother's divorce attorney, the assigned social worker and the maternal grandparents in the room during the questioning of M.T. and the father's exclusion.

The provision for questioning a child victim or witness of sexual abuse is found in KRS 421.350. It is applicable to proceedings pursuant to KRS 620 *et seq.,* when the alleged victim is twelve years of age or younger and applies to testimony of that child or another child who is twelve years of age or younger who witnesses the offense. The statute provides in pertinent part:

The court may, on the motion of the attorney for any party and upon a finding of compelling need, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence the court finds would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant.

KRS 421.350(2).

The purpose of the statute is to protect young victims and witnesses of sexual abuse from the mental and emotional inhibitions associated with testifying in the presence of the perpetrator. However, the Kentucky Supreme Court has emphasized that preventing the alleged perpetrator's presence implicates the Confrontation Clause of the Sixth Amendment and, therefore, the requisite findings outlined in KRS 421.350 must be explicitly made and its provisions scrupulously followed. *Price v. Commonwealth,* 31 S.W.3d 885 (Ky. 2000).

Although not a criminal action, it is apparent that when it enacted the statute the legislature had the same concern for the protection of the parents' rights in dependency cases. Thus, a trial court must strictly adhere to the statute's requirements.

The statute states that only "the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence *the court finds would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony.*" (emphasis ours). Despite this mandatory language, the court made no finding that the presence of those present during M.T.'s testimony would benefit her welfare and well-being.

■ We find most problematic the presence of M.T.'s mother and grandparents. They initiated the sexual abuse allegations and have maintained custody of M.T. pending the resolution of the dependency action. The father asserted that M.T.'s accusations against him were the result of the influence exerted by precisely those permitted to remain in the room during the questioning. We agree with the father that absent a finding that their presence was necessitated for the welfare and well-being of the child, the presence of the mother and her parents during the questioning constituted reversible error.

We also find reversible error in the trial court's failure to conduct a hearing to determine whether there was a compelling need to interview the child in the absence of the father's presence. "The procedure described in KRS 421.350(2) may not be utilized absent proof and a specific finding of a compelling need therefor." *Id.* at 894. We now turn to the remaining errors alleged.

The father alleges error in the trial court's refusal to permit him to cross-examine the mother concerning her affair with the pastor of their church. The court found that such evidence was irrelevant to the issue of whether the father sexually abused the children and permitted it to be entered by avowal. Under the circumstances, we conclude that the trial court abused its discretion when it excluded the evidence.

■ Whether evidence is relevant is a decision within the discretion of the trial court and its determination will not be reversed absent a showing of an abuse of discretion. *Mullins v. Commonwealth,* 956 S.W.2d 210, 213 (Ky.1997). The mother's marital affair, by itself, does not tend to prove or disprove, whether the father committed sexual abuse. *Springer v. Commonwealth,* 998 S.W.2d 439 (Ky.1999). However, the facts elicited by the avowal testimony demonstrate its relevancy.

■ The audio tape of the hearing is of poor quality and the father's counsel's attempts to introduce the evidence were hampered by the continued objections from the various attorneys present and complicated by the refusal of the judge to participate during the presentation of the avowal testimony. However, what can be discerned is that the father sought to introduce evidence that M.T. was exposed to the pastor and that the pastor was removed from a church in South Dakota because of allegations of sexual abuse. This evidence is particularly relevant where, as here, there is no physical evidence linking the father to the sexual abuse. Under the circumstances, both the affair and the child's exposure to a potential sexual abuser are relevant. On remand, the trial court must permit the introduction of any such evidence if properly proven by non-hearsay testimony.

We are unconvinced that the trial court's failure to state that the father was the

perpetrator of the abuse warrants reversal. The court's docket sheet states "abuse found" but does not designate the father as the abuser. However, the petition filed by the Cabinet contains only the name of the father as the abuser. Thus, the court necessarily found that it was the father who committed the abuse. Moreover, the father's complaint is in the nature of a challenge to the inadequacy of the court's findings, a challenge not raised by an appropriate motion. *Crain v. Dean,* 741 S.W.2d 655 (Ky.1987).

■ The father points out that only M.T. was found to be abused, yet he was ordered to have no contact with M.T. and the remaining three children. Based on *J.H. v. Com., Cabinet for Human Resources,* 767 S.W.2d 330 (Ky.App.1988), he argues that the court could not infer abuse of the children based on its finding that he abused M.T. The father ignores that *J.H.* was decided prior to the current version of KRS 600.010. Unlike the prior version of the statute, the statutory language now permits a finding that a parent or guardian is abusive or negligent who creates or allows to be created, a risk of abuse or neglect. *See* KRS 600.020(1). The statute, as written, permits the court's finding where a risk of abuse exists and does not require actual abuse prior to the child's removal from the home or limitation on the contact with an abusive parent.

The final issue we address is the father's claim that he was denied effective assistance of counsel. The father makes general averments regarding counsel's alleged failure to more zealously pursue his position that the pastor committed the alleged abuse and that the mother and grandparents coaxed M.T. into making the sexual abuse allegations.

■ We preface our discussion with the rejection of the father's claim that his ineffective assistance of counsel claim falls within the ambit of RCr 11.42. The rule is derived from the Sixth Amendment to the United States Constitution and, therefore, applies to criminal prosecutions. *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A dependency action is a civil action; the rule, therefore, has no application. Our inquiry, however, is not concluded.

The United States Supreme Court has held that in termination of parental rights cases there is no absolute right to counsel and may be determined on a case-by-case basis. *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Although not required under the United States Constitution, our General Assembly eliminated the need for a case-by-case determination by enacting KRS 625.080(3) which provides for appointment of counsel for indigent parents in termination cases and dependency cases.

■ The law in this Commonwealth is that the due process clause, and KRS 625.080(3) and 620.100(1) require that the parental rights of a child not be terminated unless the parent has been represented by counsel at every critical stage of the proceedings. This includes all critical stages of an underlying dependency proceeding in district court. *R.V. v. Com., Dept. for Health and Family Services,* 242 S.W.3d 669, 673 (Ky.App.2007).

■ It is logical that the parent's right to counsel includes effective representation. However, it does not derive from the Sixth Amendment nor can RCr 11.42 be invoked. We hold that if counsel's errors were so serious that it is apparent from the record that the parent was denied a fair and meaningful opportunity to be heard so that due process was denied, this Court will consider a claim that counsel was ineffective.

Ours is not a novel approach and such claims have been permitted by other jurisdictions. *See, e.g., In Interest of J.C., Jr.,* 781 S.W.2d 226 (Mo.App. W.D.1989); *State ex rel. Children, Youth and Families Dept. v. David F., Sr.,* 121 N.M. 341, 911 P.2d 235 (Ct.App.1995); *In re K.L.C.,* 12 P.3d 478 (Okla.Civ.App.2000); *In re S.W.,* 781 A.2d 1247 (Pa.Super.2001). However, we caution future litigants and their counsel that the burden is onerous. Restraint in raising this issue is urged and should be raised only when the ineffective assistance claim can withstand the strict standard to be applied. Moreover, the issue is properly raised on direct appeal and not in a collateral proceeding. In dependency and termination cases, the protection of the parent's rights is fundamental but, for the best interests of the children to be served, must be accomplished expeditiously as possible.

█ Turning to the facts of this case, we have reviewed the record and find no errors committed by counsel or deficiencies in his performance which demand that a deprivation of due process be found. The father's general allegations are insufficient as a basis for his claim. *Sanborn v. Commonwealth,* 975 S.W.2d 905 (Ky.1998).

As a result of the deficiencies in the court's compliance with KRS 421.350(2), we are reversing and remanding this case with directions that it conduct a hearing and, if the provisions of the statute are to be invoked, make the appropriate findings. Further, evidence regarding the mother's affair and the child's exposure to the pastor shall be deemed admissible as relevant to the issue of identifying the perpetrator of the alleged abuse.

The case is reversed and remanded for a new hearing in accordance with our opinion.

GRAVES, Senior Judge, concurs.

KELLER, Judge, concurs in result only.