v.

COMMONWEALTH of Kentucky, Cabinet of Health & Family Services; B.M.P., a Minor Child, Appellees.

No. 2008–CA–000730–ME.

Court of Appeals of Kentucky.

Oct. 24, 2008.

Jonathan O. Wells, LaGrange, KY, for appellant.

Barbara M. Gunther, Cabinet for Health & Family Services, Frankfort, KY, for appellee.

Before ACREE, CLAYTON, and KELLER, Judges.

*OPINION*

CLAYTON, Judge.

A.P. (Mother) appeals the judgment of the Trimble County Court that involuntarily terminated her parental rights to B.M.P (Child). The appellant contends that her due process rights were violated, that her counsel's assistance was ineffective, and that the findings of fact were not supported by clear and convincing evidence. We agree as to the due process issue, and therefore, vacate and remand.

The minor child at issue in this appeal, was born on May 25, 2001, in Madison, Indiana, to the mother, and E.G. (Father). On October 17, 2005, a dependency, neglect, and abuse petition was filed by the Cabinet of Health and Family Services (Cabinet), which alleged that, while the mother and child were living in the home with maternal grandmother and her husband, evidence came to the attention of the Cabinet that the mother's stepfather had abused the child. After a safety plan was created by the Cabinet with the mother that required the child not have contact with her step-grandfather, the Cabinet alleged that the mother permitted the contact.

Thereafter, on October 17, 2005, the Cabinet filed a petition for dependency, abuse & neglect in the Trimble Family Court. The court conducted an emergency custody hearing placing the child with

the father. Later, on October 25, 2007, after a temporary removal hearing, the court gave temporary custody of the child to her father.

On June 5, 2006, the Cabinet filed a second petition for dependency, neglect and abuse in Trimble Family Court. In this petition, the Cabinet alleged that the child was a dependent, neglected, and abused child as a result of certain actions by L.G. (Stepmother). After an emergency custody hearing, the child was placed at the Home of the Innocents on the advice of the child's therapist. But after a review hearing on January 8, 2007, the court entered an order dismissing the second dependency, neglect and abuse petition, continuing the child's commitment to the Cabinet, and continuing the child's placement with father and stepmother.

Next, the Trimble Family Court on September 10, 2007, held a permanency hearing, but the father did not participate because on June 26, 2007, his parental rights to the child had been voluntarily terminated. The record is unclear as to whether or not the mother was considered for custody of the child after the father relinquished custody. Regardless, the court, at this time, ordered that the goal be changed to adoption. On July 30, 2007, the Cabinet filed an involuntary termination of parental rights against the mother on behalf of the child. Subsequently, Katherine Whitten was appointed the guardian ad litem for the child and Ron Adams was appointed as the mother's attorney. The trial was set for December 5, 2007. Notably, the mother does have custody of two other children, brothers of the child, born in 2004 and 2007, respectively, which remain in her custody.

The bench trial occurred over two days, December 5, 2007, and February 26, 2008. On December 5, 2007, all the parties including the mother appeared, but her counsel was not present. He was unable to be there because of inclement weather in Northern Kentucky. The court spent some time trying to reach Mr. Adams but was unsuccessful. Then, the court decided to allow Dr. Paul A. Ebben, the clinical psychologist who had assessed the mother to testify. Apparently, the court considered that Dr. Ebben was from Frankfort and did not want him to have to come back. The court, however, did caution that Mr. Adams would not be limited in his cross-examination of Dr. Ebben. Further, he allowed the mother to have her mother to come in and sit with her for moral support. But the court did note that the mother was not expected to make any objections. Yet, a review of the trial videotape shows that the mother was never questioned about whether or not she wished to proceed with the hearing without her counsel present.

At the conclusion of Dr. Ebben's testimony and cross-examination by the guardian ad litem, wherein it was established that the evaluation of the mother had occurred two years earlier in December 2005, the court again attempted to contact the mother's attorney to ascertain whether the trial could be resumed later in the day. It indicated that Dr. Ebben's testimony was on a separate videotape for the mother's counsel to review. When the court could not reach Mr. Adams, it decided to allow Gina Anderson, the child's therapist, to testify because she would not be able to testify at the court's earliest open date for the trial in late February. Ms. Anderson was pregnant and due in early February 2008. During Ms. Anderson's testimony, Mr. Adams called the court and was put on speaker phone. He advised the court he would be unable to make the hearing that day due to the road conditions. The court advised Mr. Adams that Dr. Ebben and Ms. Anderson had testified but the court

had reserved his right to cross-examine them. Mr. Adams indicated it was fine for the court to continue without him. Again, no one, including Mr. Adams, discussed it with the mother.

While the court obviously considered the issue of the mother's counsel not being present, its solution was to separately videotape the testimony of the two witnesses, Dr. Ebben and Ms. Anderson for the mother's counsel. Interestingly, her counsel could have just reviewed the videotape of the actual hearing rendering the making of separate videotapes somewhat superfluous.

The second day of the trial was held on February 26, 2008. The trial was delayed forty-five minutes and during the delay, Mr. Adams spoke off the record with Dr. Ebben about his prior testimony. Ms. Anderson was also available for cross-examination by phone but Mr. Adams had no questions for either witness, and hence, both witnesses were released. The record does not demonstrate whether or not Mr. Adams had reviewed the tapes from the December 5, 2007, hearing. The Cabinet called the following witnesses:

Heather Waldridge, Cabinet social worker

Megan Meek, Cabinet social worker

Cathy Jones, LCSW with 7CS

Denise Hall, Parenting class instructor with Trimble County

Glenn Hurly, foster parent

The only witness called by Mr. Adams was the mother. At the conclusion of the trial, the court called upon Kate Bowling, the CASA volunteer. Although she was not sworn in, she was asked by the judge to give a ninety-second synopsis of her involvement and recommendation for the child to the court. In fact, Ms. Bowling was present during the entire trial, having not been asked to leave during the testimony of the other witnesses.

■ The mother has raised several issues for our review. First, she posits that her counsel was not present during the first day of the termination hearing and that was a violation of her due process right to a fair hearing. As recounted above, even though the mother's attorney was not able to attend the first day of the trial, the court proceeded with the hearing, and ultimately rendered an order terminating her parental rights upon evidence produced at the trial. We believe that the family court committed error by allowing the first day of the hearing to proceed without the mother's counsel being present.

■ First, constitutional jurisprudence holds that parental rights are "essential" and "basic" civil rights, "far more precious ... than property rights." *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (citations and internal quotation marks omitted). Thus, there is no greater sanction to the parent/child relationship than the involuntary termination of a parent's rights. If the state seeks to terminate this sacrosanct relationship, parents are entitled to fundamentally fair procedures. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The United States Supreme Court, however, has held that no absolute due process right exists to counsel in termination of parental rights actions, but from a constitutional standpoint, appointment of counsel may be determined on a case-by-case basis. *Lassiter v. Department of Social Services of Durham County, N.C.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

■ But here in the Commonwealth, we have further guidance because the legislature mandates routine appointment of

counsel to represent indigent parents not only in termination cases but also in dependency cases. *See* Kentucky Revised Statutes (KRS) 625.080(3) and KRS 620.100(1). Hence, Kentucky's statutory scheme to protect children and to adjudicate parental rights provides for the appointment of counsel throughout all the proceedings.

Our analysis now turns to the case in chief. The mother was provided representation throughout the proceedings involving the child, except at, perhaps the most critical stage, the first scheduled day of the trial. Although the judge at the beginning of the proceedings stated on the video record, "... termination of parental right is a serious matter and we can't go forward without Ms. P. being represented," he did just that.

Apparently, the court had great concern about Dr. Ebben, having come from Frankfort, to travel back on another day. To remedy the absence of the mother's counsel, as noted above, besides continuing to try and reach her counsel, the court had the two witnesses' testimony separately taped for the absent counsel's review. These extra videotapes were prepared notwithstanding that the attorney could have reviewed the trial videotapes anyway. Significantly, even though the Cabinet's counsel suggested that a relative be allowed to sit with the mother during the hearing, which the court allowed, neither the judge nor the mother's counsel directly queried her about whether or not she wished to proceed without counsel.

Additionally, after Dr. Ebben's testimony both the Cabinet's counsel and the guardian ad litem offered that they did not feel comfortable about continuing without the presence of the mother's counsel. Still, because Ms. Anderson was due in early February and might not be able to be present at a continuation of the trial, they overcame their reluctance and acquiesced in the trial's continuance. Another concern seen on the record is that the witnesses were not officially asked to separate themselves from the trial until the questioning of the second witness commenced. The videotape shows the foster parents being present during the examination of Dr. Ebben by Cabinet's counsel and the guardian ad litem.

When, during Ms. Anderson's testimony, the mother's counsel finally reached the court by telephone, without conferring with his client, he said it would be fine to go ahead without him. Later, when the trial resumed on February 26, 2008, Dr. Ebben was physically present and Ms. Anderson was present telephonically, nonetheless, the mother's attorney did not cross-examine either witness.

In *R.V. v. Commonwealth, Department for Health and Family Services*, 242 S.W.3d 669, 673 (Ky.App.2007), the Court held "that the parental rights of a child may not be terminated unless that parent has been represented by counsel at every critical stage of the proceedings." Furthermore, the Court opined that "[p]arents are entitled to a meaningful opportunity to be heard, including the right to consult with counsel[.]" *Id.* at 672.

We cannot say that the failure of the mother's counsel to be present on the scheduled day of the trial during the testimony of the first two witnesses made no difference in the family court termination proceeding. The judge, the Cabinet's counsel, and the guardian ad litem all indicated uneasiness with the proceeding since the mother's counsel was not present. Unfortunately, the focus seemed to be on the witnesses' convenience rather than the mother's fundamental right to be properly represented during the trial.

We view the mother's remaining arguments as moot.

Upon remand, the family court shall conduct another termination hearing under KRS 625.080, and the mother shall be represented by counsel during the entire proceeding. Thereafter, the court shall render its findings of fact, conclusions of law, and order regarding termination of parental rights. Further, this opinion should not be seen as addressing the merits of whether the mother's parental rights should be terminated. We offer no opinion on that matter. Rather we emphatically insist that such a serious matter, possible loss of this elemental societal relationship between parent and child, requires complete deference to providing for all the parent's due process rights.

For the foregoing reasons, the order of the Trimble Family Court is vacated, and this case is remanded for proceedings not inconsistent with this opinion.

ALL CONCUR.