v.

CABINET FOR HEALTH AND FAM-ILY SERVICES, Commonwealth of Kentucky; and I.T., Appellees

and

J.I.T., Appellant

v.

Cabinet for Health and Family Services, Commonwealth of Kentucky; and I.T., Appellees

NO. 2015–CA–000627–ME, NO. 2015–CA–000701–ME

Court of Appeals of Kentucky.

RENDERED: JANUARY 22, 2016; 10:00 A.M.

BRIEF FOR APPELLANT, T.W.: Ashley Larmour, Lexington, Kentucky.

BEFORE: COMBS, J. LAMBERT AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

T.W. (mother) and J.I.T. (father) appeal separately from an order and judgment of the Fayette Family Court terminating their parental rights to their minor child. The issues presented are whether mother and father were denied their statutory right to counsel and whether there was sufficient evidence to warrant termination. We conclude that reversal is required in both appeals on the basis mother and father were denied effective assistance of counsel when the family court proceeded with the termination hearing after counsel requested that he be permitted to withdraw based on a conflict of interest. The issue concerning the sufficiency of the evidence to warrant termination is moot.

Child was born on December 22, 2011. After child was taken to a physician for a routine checkup, physical abuse was suspected and, on March 28, 2012, child was removed from the home and placed in the maternal grandmother's care and custody. Mother and father have consistently denied abusing child. As of the termination hearing date, no one has been criminally charged. After mother and father moved to a duplex adjoining the grandmother's duplex, the Cabinet became concerned that mother and father were acting as caretakers. Child was placed in the Cabinet's custody on June 1, 2012, and placed in foster care where he has remained.

On March 14, 2014, the Cabinet filed a petition for involuntary termination of parental rights against mother and father. Mother and father retained the same counsel to represent both of them in the proceeding. A termination hearing was scheduled for October 20, 2014.

On the scheduled hearing date, mother and father's counsel orally moved for leave to withdraw from the case based on his conflict of interest in representing mother and father when the perpetrator of the abuse was unknown. The trial court ruled counsel would not be permitted to withdraw on that day and the Cabinet would be permitted to put on its proof without further delay. The family court noted that the Cabinet's witnesses, including its expert who traveled from Louisville, were all present. However, the family court recognized counsel had a "possible" conflict of interest and new counsels for mother and father might be permitted to cross-examine these witnesses at some date in the future.

The Cabinet proceeded with its case and called Dr. Melissa Currie, an expert in the subject matter of child abuse forensics. She testified that the child suffered multiple fractures and bilateral ear bruising which, in a two-month-old infant, is a very strong indicator of child abuse. She testified that there was a reasonable degree of medical certainty that the injuries were not due to an accident and, if the fractures were present at birth, they would have been detected at that time. In Dr. Currie's opinion, there was no medical condition that contributed to the child's injuries. Counsel for mother and father did not cross-examine the witness.

Aimee Mau was the University of Kentucky Comprehensive Assessment and Training Services (CATS) team leader who performed the parental assessment/evaluation on mother and father. She testified

that it was quite significant that there was very limited acknowledgment by mother and father of the child's physical abuse and mother and father had been less than forthright in their respective interview responses. She testified that CATS could not recommend a case-plan for reunification due to mother's and father's refusal to acknowledge the child's physical abuse. Counsel for mother and father did not cross-examine the witness.

Cabinet Social Worker Amber Lambert was the first Cabinet ongoing worker assigned to the case. She testified that during the time she was assigned to the case, mother and father failed to provide essential parental care and protection for the child and child had resided in out-of-home care under the responsibility of the Cabinet for more than 16 of the most recent 22 months prior to the filing of the Cabinet's petition. She testified that she thoroughly explained to mother and father that the Cabinet could not safely reunify the child into their home until the perpetrator of the child's abuse had been identified. Counsel for mother and father did not cross-examine the witness.

The final witness in the Cabinet's case-in-chief was the ongoing case worker, Michael Burgess, who assumed responsibility for the case from Lambert and continually worked the case through the date of trial. She testified that mother and father had not cooperated with the Cabinet and that neither offered a possible cause of the child's injuries or taken responsibility for those injuries. She further testified that mother and father were in arrears in child support. Burgess testified that the Cabinet had no other services to offer mother and father and reiterated Lambert's point that reunification was impossible as long as the perpetrator of the abuse remained unidentified. Counsel for mother and father did not cross-examine the witness.

At the conclusion of the Cabinet's evidence, the family court permitted counsel for mother and father to withdraw and, later, separate counsels were appointed to represent mother and father. On January 6, 2015, the termination hearing reconvened. Counsels for mother and father objected to proceeding with the trial in light of the deprivation of assistance of counsel during the opening day of trial after mother and father's counsel did not actively represent their respective interests. The trial court denied the motion but it again indicated it might permit the Cabinet's witnesses to be recalled and cross-examined at some future date.

Mother and father denied abusing child despite acknowledging the abuse occurred while in their primary care. Although no names were provided, mother and father testified that multiple adults and children had unsupervised access to the child and may have inflicted injuries on the child. Earlier statements made by mother and father to Cabinet workers did not include the possibility of a third party causing the child's injuries. At the conclusion of the mother's and father's witnesses, the family court inquired if mother or father desired to recall and cross-examine the Cabinet's witnesses. Both counsels declined.

The family court entered findings of fact and conclusions of law and an order terminating the parental rights of mother and father. In determining that mother's and father's rights should be terminated, the family court stated:

> Respondent parents have completed all remedial measures directed by the [C]abinet to indicate that there would be a reasonable expectation of improvement in parental care and protection in the future. However, this [c]ourt cannot return a child into a home where the child was severely physically abused, and

where the perpetrator of the abuse is still acting in a caregiving role.

■ Our review begins with the issue raised concerning the denial of mother's and father's right to counsel. Parental rights are deemed to be a "basic" right, "far more precious than property rights." *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (citations and internal quotation omitted). In parental termination proceedings, parents are entitled to fundamentally fair procedures. *Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982). Despite the "fundamental liberty interest of natural parents in the care, custody and management of their child," *id.* at 753, 102 S.Ct. at 1394–95, the United States Supreme Court has held there is no absolute constitutional due process right to counsel in termination of parental rights actions, but appointment of counsel may be determined on a case-by-case basis. *Lassiter v. Department of Social Services of Durham County, N.C.,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

■ In this Commonwealth, the General Assembly has eliminated the need for a case-by-case determination. *A.C. v. Cabinet for Health & Family Services,* 362 S.W.3d 361, 366 (Ky.App.2012). Kentucky Revised Statutes (KRS) 625.080(3), provides, in pertinent part, that "parents have the right to legal representation in involuntary termination actions." Our jurisprudence is established that the "due process clause, and KRS 625.080(3) and 620.100(1) require that the parental rights of a child not be terminated unless the parent has been represented by counsel at every critical stage of the proceedings." *Z.T. v. M.T.,* 258 S.W.3d 31, 36 (Ky.App. 2008).

*A.P. v. Commonwealth,* 270 S.W.3d 418 (Ky.App.2008), while not involving identical facts to the present, reaffirms the view taken in this Commonwealth regarding the right to counsel when the Commonwealth seeks to sever the sacrosanct parental relationship. In that case, the mother's counsel was not present on the first day of the termination hearing due to inclement weather and the court's initial attempts to contact him by telephone were unsuccessful. Although recognizing that proceeding without the mother's counsel present may constitute error, the trial court nevertheless proceeded.

The clinical psychologist who assessed the mother testified as did the child's therapist. During the therapist's testimony, the mother's counsel called the court and explained the reason for his absence. The court informed counsel that it had reserved his right to cross-examine the witnesses and counsel indicated he had no objection to continuing the hearing. No one discussed proceeding without the presence of counsel with the mother.

This Court held that the first day of a termination hearing was perhaps the most critical stage and the absence of counsel required reversal and remand for a new termination hearing with counsel present. *Id.* at 421. Importantly, it noted that witness convenience was not an exception to the law that parents are entitled to counsel at all critical stages of the termination proceedings. *Id.*

In this case, counsel was physically present on the first day of the termination trial but believed ethical obligations precluded him from representing both mother and father. His belief was not unfounded. Kentucky Supreme Court Rules (SCR) 3.130–1.7(a)(1) provides in part that a lawyer shall not represent a client if the representation of that client "will be directly adverse to another client[.]" The same rule provides in part that a lawyer shall not represent a client if "there is a signifi-

cant risk" that the representation of that client may be "materially limited by the lawyer's responsibilities to another client ... or a third person[.]" SCR 3.130–1.7(a)(2).

Although perhaps belatedly realized, counsel had an actual conflict of interest. If it was demonstrated father was the perpetrator, mother's rights might have been safe from termination. Conversely, if it was demonstrated mother was the perpetrator, father's rights might not have been terminated. According to the family court's findings of fact and conclusions of law, although the mother and father had otherwise been cooperative with the Cabinet and there would be a reasonable expectation of improvement in parental care and protection in the future, the lack of identity of the perpetrator was the very reason the family court believed termination was the only option. The Cabinet's caseworkers expressed similar reasoning for not attempting reunification. The question is whether this conflict of interest constituted ineffective assistance of counsel requiring a new termination hearing.

■ In the criminal context, both the United States Supreme Court and our Supreme Court have recognized that effective counsel means conflict-free counsel. *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *Bartley v. Commonwealth,* 400 S.W.3d 714, 719 (Ky. 2013). Under an exception to the well-known prejudice prong of the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard for ineffectiveness of counsel claims, when there is an actual conflict of interest between counsel and his or her criminal-defendant client, prejudice is presumed. *Mitchell v. Commonwealth,* 323 S.W.3d 755, 759–60 (Ky.App.2010).

In *Commonwealth v. Tigue,* 459 S.W.3d 372 (Ky.2015), the Court held an actual conflict of interest arose when the criminally accused sought to withdraw his plea based on allegations that counsel threatened and coerced him into pleading guilty. Citing with approval the federal court's reasoning in *United States v. Davis,* 239 F.3d 283 (2d Cir.2001), the Court held this is so even if counsel stands silent and does not contradict the defendant. *Id.* at 386.

■ *Tigue* involved a criminal proceeding. An action for involuntary termination of parental rights "is a civil, not a criminal, proceeding." *Cabinet for Health & Family Services. v. A.G.G.,* 190 S.W.3d 338, 347 (Ky. 2006). However, because this Commonwealth recognizes that due process and statutory law require counsel during critical stages of a termination proceeding, "[i]t is logical that the parent's right to counsel includes effective representation." *Z.T.,* 258 S.W.3d at 36. We conclude that where, as here, counsel had an actual conflict of interest, a parent is not required to demonstrate prejudice caused by that representation and it must be presumed. Consequently, the only remedy is reversal and remand for a new termination hearing.

We have not reached our decision without recognizing that it will delay a final resolution of this case for child and that the family court attempted to remedy the denial of counsel by permitting newly appointed counsel to cross-examine the Cabinet's witnesses at a future date. However, in this Commonwealth, it is a fundamental right of parents facing termination of their parental rights to have counsel not only present but also conflict-free. As this Court stated in *A.P.,* 270 S.W.3d at 422, in such a serious matter as the termination of parental rights, there must be "complete deference to providing for all the parent's due process rights." We stress that our decision in no way addresses the merits of

whether mother's and father's parental rights should be terminated.

For the foregoing reason, the order of the Fayette Family Court is reversed and the case remanded for proceedings consistent with this opinion.

ALL CONCUR.