RENDERED: SEPTEMBER 26, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0250-ME

J.W.                                                                              APPELLANT

v.

APPEAL FROM ROCKCASTLE CIRCUIT COURT
HONORABLE JANE ADAMS VENTERS, JUDGE
ACTION NO. 24-AD-00021

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND J.L.J.W. (A
CHILD)                                                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND EASTON, JUDGES.

COMBS, JUDGE: Appellant, J.W. (Mother), appeals from a Judgment of the

Rockcastle Circuit Court, Family Division, terminating her parental rights to her

minor child. After our review, we affirm.

On May 13, 2024, the Cabinet filed a petition to terminate Mother's

parental rights to the minor child, J.L.J.W., a male born in 2021 (the child).

According to the petition, the child's father is deceased. The Cabinet alleged that (1) the child is a neglected child as defined in KRS[1] 600.020 after having been so adjudicated in Case No. 23-J-00031 by Order of June 7, 2023, and (2) that it would be in the child's best interests if Mother's parental rights are terminated. It also determined that:

> [Mother], for a period of not less than six months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and there is no reasonable expectation of improvement in parental care and protection, considering the age of the child.

> [Mother], for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care or education reasonably necessary and available for the child's well-being, and there is no reasonable expectation of significant improvement in parental conduct in the immediately foreseeable future, considering the age of the child.

On August 22, 2024, the family court conducted a final hearing on the Cabinet's petition. Cabinet worker Brianna Bowling testified -- as did Mother.

On September 19, 2024, the family court entered Findings of Fact and Conclusions of Law (FFCL) and entered an Order Terminating Parental Rights and an Order of Judgment -- all of which we discuss further in our analysis below.

---

[1] Kentucky Revised Statutes.

On September 30, 2024, Mother, *pro se*, filed a handwritten "motion to alter, amend or vacate" as follows in its entirety:

> Incompetent legal counsel, who refuses to file appeal, wasn't able to be reached outside of court[,] did not submit evidence or call witnesses. Had to speak in court for myself leading up to [termination of parental rights] TPR most of the time. Findings in case are incorrect.

The family court subsequently relieved Honorable Jerome Fish as counsel for Mother and appointed Honorable Susan J. Ham in his place. On January 16, 2025, the family court entered a detailed order denying Mother's motion as follows in relevant part:

> On January 3, 2025, [Mother] and counsel appeared and argued the motion. Hon. Ham stated that [Mother] had provided her with the names of some witnesses whom she would have liked to have testified about her progress in treatment. No additional specifics were given concerning what the testimony might have included. Hon. Spurlock[2] pointed out that the social worker's testimony at trial acknowledged [Mother's] recent improvements. In addition to [Mother's] own testimony on that date concerning her treatment and her progress, the social worker confirmed her testimony but pointed out the relative recentness of the progress when considered in light of the length of time the case has been pending and the length of time the child has been out of her custody. The [guardian ad litem] GAL characterized the testimony at trial regarding [Mother's] recent progress as part of a pattern of not doing enough soon enough.

---

[2] Counsel for the Cabinet.

-3-

The Motion alleges ineffective assistance of counsel. The standard for showing ineffective assistance of counsel in dependency or termination of parental rights proceedings is a very difficult one to meet and general allegations will not suffice to establish ineffective assistance. *Z.T. v M.T.*, 258 S.W.3d 31 (Ky. App. 2008). Only "if counsel's errors were so serious that it is apparent from the record that the parent was denied a fair and meaningful opportunity to be heard so that due process was denied," does such a claim merit consideration of relief. *Id.* at 37. As pointed out by the Cabinet, counsel elicited testimony from [Mother] and vigorously cross examined the Cabinet's witness at the hearing and no specific actions or omissions of her counsel have been alleged with adequate specificity for the court to evaluate in any meaningful way. Likewise, the broad and general assertion that the "Findings in case are incorrect" does not permit any meaningful review. The burden to show ineffective assistance of counsel has not been met. New counsel has been appointed for [Mother] who may assist her with an appeal if desired. The motion is hereby DENIED.

Mother now appeals. Her new counsel, Honorable Susan J. Ham, filed a motion to withdraw and tendered a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *A.C. v. Cabinet for Health and Family Services*, 362 S.W.3d 361 (Ky. App. 2012). By Order of this Court entered May 16, 2025, the motion to withdraw was passed to this merits panel, and Mother was permitted to proceed *pro se* and to file a supplemental brief within 30 days if she so desired -- as well as a reply brief. However, Mother has not filed either a supplemental brief or a reply brief. We proceed with our review.

Where -- as here -- counsel files an *Anders* brief and a motion to withdraw, "we are obligated to independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal." *A.C.*, 362 S.W.3d at 372. That is, we must determine if any meritorious grounds exist.

As our Supreme Court explained in *Cabinet for Health and Family Services v. H.L.O.*, 621 S.W.3d 452 (Ky. 2021):

> The termination of parental rights is a particularly fact-sensitive inquiry, so appellate courts are disinclined to disturb a trial court's findings. [*Cabinet for Health and Family Servs. v. K.H.*, 423 S.W.3d 204, 211 (Ky. 2014).] Where the trial court's findings are not clearly erroneous, and they substantially support the TPR, we will affirm the order. *Id.* "Clear and convincing proof does not necessarily mean uncontradicted proof. It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent minded people." *Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934).
>
> It is a fundamental right of every parent to raise his or her own child. *K.H.*, 423 S.W.3d at 209. KRS 625.090 sets forth all the requirements which must be met before a court in Kentucky can involuntarily terminate a parent's rights to his or her child. Because of the heightened value of the right to parent a child, such proof must be clear and convincing in nature. *Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The statute requires the court to find three critical elements. First, the court must find that the child has been found to have been abused or neglected by a court of competent jurisdiction. KRS 625.090(1). Second, the court must find at least one of the eleven enumerated grounds for termination exists. KRS 625.090(2). Lastly, even if the Cabinet establishes both of these elements, the court must

> still determine that termination is in the child's best interest. KRS 625.090(1)(c).

*Id.* at 462 (footnote omitted).

In the case before us, the family court's determination that the child "was previously adjudged a neglected and abused child by this court in his underlying juvenile action[,]" has a substantial evidentiary foundation and satisfies the first prong of the tripartite test. KRS 625.090(1)(a)1.[3]

Next, KRS 625.090(2) provides that: "No termination of parental rights shall be ordered unless the Circuit Court also finds by clear and convincing evidence the existence of one (1) or more of [several enumerated] grounds[.]" The family court concluded that grounds exist under both KRS 625.090(2)(e) and (f).

We first examine KRS 625.090(2)(e), which provides that . . . .

> [T]he parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[.]

The family court's factual findings which support this conclusion include the following:

---

[3] KRS 625.090 was amended effective June 27, 2025. Our references to KRS 625.090 are based on the version of the statute in effect from July 14, 2022, to June 26, 2025, the dates pertinent to this case.

The child entered foster care under the Cabinet's responsibility most recently on May 4, 2023, and has remained there continuously since he was committed to the Cabinet by order of July 18, 2023 . . . .

[The child] was removed from his mother's home because she tested positive for methamphetamine, buprenorphine and marijuana while caring for [the child] and two half siblings. The home was filthy and unsanitary. All three . . . children were removed at the same time.[4]

…

Upon removal of her children, the Cabinet began its efforts to reunify [Mother] with them. She negotiated a reunification case plan on May 19, 2023, that asked her to complete substance abuse and mental health assessments, obtain stable housing and legal income and to call in to the local Cabinet office each weekday . . . for a potential random drug screen. She was also asked to work on coping skills and identify triggers caused by her volatile relationship with her mother, with whom she lived. . . . [Mother] was to complete a Suboxone-based, medically assisted substance abuse treatment.

. . .

By the end of the first, six-month case planning period, [Mother] failed to a make any progress toward reunification. In addition to her failure to complete the programs listed in her plan, she failed to call in at all for random drug screens.

---

[4] According to the Cabinet worker's testimony at the hearing, the half-siblings are in their father's permanent custody. They are not involved in this proceeding.

The family court further found that Mother's second case plan was negotiated on November 14, 2023, retaining the initial tasks and adding an IOP[5] and participation in recommended mental health services. By December 2023, Mother enrolled in an IOP at Victory Counseling. On February 1, 2024, Mother reported a relapse on methamphetamine. She was referred to inpatient treatment at Women Finding Freedom and completed a 28-day program there, but she declined the staff's recommendation that she stay longer. By April 2024, Mother was pregnant.

The court found that Mother's third case plan meeting occurred on May 10, 2024. In addition to the prior existing tasks, a new mental health assessment had a list of requirements. Since then, Mother had started therapy and had completed a recommended IOP. However, she remained unemployed and lived with her mother. Since May 2024, Mother was calling in for random drug screens and had tested clean when asked to test (the only exception was on August 23, when Mother was asked to test but did not do so until the next day).

Significantly, the family court also found that:

> [Mother's] testimony was self-serving and lacked sincerity, candor and depth of understanding of the significance of her actions relating [to] substance use and inactions relating to stability with housing and employment. . . . She has not established that she can work, maintain a household and handle other life

---

[5] Intensive outpatient substance abuse program.

challenges and stressors while remaining sober. She has only been screening clean for the Cabinet since May of this year.

[Mother] has failed to establish that she can obtain and maintain a proper home for [the child]. She continues to rely on her own mother for housing even with their troubled relationship. The court is not confident that her mother's home would be observed an appropriate environment for [the child] given the past conflict and strife between [Mother] and her mother.

While [Mother] has made progress with sobriety, although not long term, she has significant mental health diagnoses (Bipolar, PTSD, depression and anxiety), which give the court concern absent a period of long term sobriety and treatment. The lack of continued case plan progress from May of 2023 until May of 2024, with the stops and starts, is concerning and indicates another area for which there is no sustained stability. The court, after observing [Mother] and considering the testimony, is not convinced a significant mental health stability has been achieved.

Moreover, in its Conclusions of Law, the family court explained that:

The court must weigh [Mother's] apparent recent progress against a far longer period of outright inactivity or half-steps. It is true that she enrolled in various substance abuse and counseling programs, but consistent effort and maintenance of sobriety was [*sic*] elusive. The same applies to all other aspects of her reunification case planning goals. She did not make any substantive steps toward gainful employment and her efforts at finding appropriate housing were half-hearted, at best. At trial, she offered explanations for each of her failures but these often became tangled and inconsistent as her testimony progressed. What emerged were mostly justifications and the court was troubled that [Mother] ultimately failed to take full responsibility for any of her actions.

[Mother's] statements and the other evidence at trial make the court wary of claims about her current and long term sobriety. Likewise, the prospect of maintaining a long term, safe, stable household with her mother does not appear likely, [Mother's] claims to the contrary notwithstanding. The prospect of a new baby in addition to other challenges such as long-term sobriety adds to the court's concern regarding [Mother's] ability to properly parent [the child] anytime soon.

Based upon our independent review of the record, we conclude that the family court's findings are based upon clear and convincing evidence and amply support its conclusion that grounds for termination exist under KRS 625.090(2)(e). That is sufficient. "The statute requires only one of the grounds be proven by clear and convincing evidence." *T.P. v. Cabinet for Health and Family Services*, 697 S.W.3d 758, 762 (Ky. App. 2024). We need not address the other.

The remaining prong of the tri-partite test requires that the court conduct a best-interest analysis considering the factors set forth in KRS 625.090(3) which are as follows:

> (a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

> (b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

-10-

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020 to reunite the child with the parents unless one or more of the circumstances enumerated in KRS 610.127 for not requiring reasonable efforts have been substantiated in a written finding by the District Court;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

The family court considered these factors and explained at page 13 of its FFCL as follows:

As set forth in the court's findings of fact hereinabove, the court considered the impediments [Mother's] mental health diagnoses, instability and inconsistency in treatment, impose on her ability to provide consistent care for [the child] and meet his physical and psychological needs; that [Mother] stipulated to neglect of [the child's] half siblings and they are in the permanent custody of their father in another state; the Cabinet has made thorough and consistent efforts to achieve reunification by offering [Mother] services for treatment of mental health and substance use as well as providing her with resources to facilitate housing and employment; [Mother's] efforts have not resulted in a

-11-

significant change in her circumstances given that her sobriety is recent and untested in light of years of using, she has no employment or appropriate housing nor does she have a plan for either, and there is no indication that there is a pathway that would make it in [the child's] best interest to return to her care within a reasonable period of time; [the child] has undeveloped vocal chords and his foster mother is ensuring he receives the therapy and medical care he needs in that regard and otherwise. [The child] is fully integrated with the foster mother and her adult daughter and other family members and the prospects of his physical, mental and emotional health will continue to improve if termination occurs; there was no testimony about [Mother] paying child support or providing any kind of financial support for [the child's] care.

The standard of our review of a family court's best-interest determination is abuse of discretion. *D.J.D. v. Cabinet for Heath and Family Services*, 350 S.W.3d 833, 837 (Ky. App. 2011). "Absent a showing that a decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles, a family court's determination on the issue will not be an abuse of discretion and will be sustained." *Id.* We are satisfied from our review of the record that the family court properly considered best-interest factors and that its findings have a substantial evidentiary foundation. We find no abuse of discretion. The final prong of the tripartite test has been met.

With respect to Mother's claim of ineffectiveness of counsel, *Z.T.*, *supra*, holds that:

The law in this Commonwealth is that the due process clause, and KRS 625.080(3) and 620.100(1) require that the parental rights of a child not be terminated unless the parent has been represented by counsel at every critical stage of the proceedings. . . .

It is logical that the parent's right to counsel includes effective representation. However, it does not derive from the Sixth Amendment nor can RCr 11.42 be invoked. We hold that if counsel's errors were so serious that it is apparent from the record that the parent was denied a fair and meaningful opportunity to be heard so that due process was denied, this Court will consider a claim that counsel was ineffective. . . .

[T]he burden is onerous. Restraint in raising this issue is urged and should be raised only when the ineffective assistance claim can withstand the strict standard to be applied. Moreover, the issue is properly raised on direct appeal and not in a collateral proceeding. In dependency and termination cases, the protection of the parent's rights is fundamental but, for the best interests of the children to be served, must be accomplished expeditiously as possible.

*Id.* at 36-37.

Mother's claim fails to meet this standard. As in *Z.T.*, *supra*, we "find no errors committed by counsel or deficiencies in his performance which demand that a deprivation of due process be found." *Id.* at 37.

Accordingly, we affirm the judgment of the Rockcastle Circuit Court, Family Division, terminating Mother's parental rights to the child. By separate Order we grant the motion to withdraw filed by Mother's counsel, Honorable Susan Ham.

-13-

ALL CONCUR.


ANDERS BRIEF
FOR APPELLANT:

Susan J. Ham
Somerset, Kentucky

BRIEF FOR APPELLEE
COMMONWEALTH OF
KENTUCKY, CABINET FOR
HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky