NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 4

No. 2017-240

In re L.H., L.H. and L.H., Juveniles

Supreme Court

On Appeal from
Superior Court, Windham Unit,
Family Division

November Term, 2017

Michael R. Kainen, J.

Matthew Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for
Appellant Father.

Adele V. Pastor, Barnard, for Appellant Mother.

Thomas J. Donovan, Jr., Attorney General, Montpelier, and Jody A. Racht, Assistant Attorney
General, Waterbury, for Appellee Department for Children and Families.

Michael Rose, St. Albans, for Appellees Juveniles.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Teachout, Supr. J.,
Specially Assigned

¶ 1. **ROBINSON, J.** This case requires us to consider whether a court may terminate parents' parental rights following a hearing in which, over an objection, the State was represented by the same lawyer who had previously represented the children in the same matter. Mother and father separately appeal the court's order terminating their parental rights with respect to three of their daughters. We do not address many of their challenges to the trial court's findings and conclusions because we conclude that a conflict of interest by the State's counsel compromised the proceedings. Accordingly, we reverse and remand for a new hearing.

¶ 2.     The proceedings below involved four of parents' children, La.H. (the oldest child), born in June 2003, Ly.H., born in September 2007, Le.H., born in October 2009, and Li.H., born in September 2011.[1]  Two events were the immediate triggers for this case.  In August 2014, in the presence of two of the children, father allegedly punched mother in the left eye, pulled her hair, and kicked her with boots on.  In September 2014, DCF received a report that the three younger children were playing near a busy road unclothed and without adult supervision.  DCF social workers went to the home and found food, dirty laundry, and trash all over the floor.  The State filed a petition alleging the children were in need of care or supervision (CHINS).  In October 2014, parents stipulated that the children were CHINS.  The initial disposition order placed the children in mother's conditional custody.  The case plan's concurrent goals were reunification with mother or adoption.

¶ 3.     In April 2015, citing significant conflict and communications issues between the oldest child and mother, the court granted DCF custody of the oldest child; she was eventually placed with the foster family in New Hampshire with whom she had lived while in state custody in New Hampshire several years earlier.  The three younger children remained with mother.

¶ 4.     Due to continued concerns about the children's cleanliness and regression at school, the condition of the home, and mother's inability to manage the finances, the court modified the case plan in May 2015 to add reunification with father as an additional case plan goal.

¶ 5.     In December 2015, the court granted the State's motion to place the younger three children in DCF custody based on chronic concerns that the children were not properly clothed for the weather, the home was unclean and smelling of urine, the children were not properly fed, and mother was not properly supervising the children.  In June 2016, the court terminated visits

---

[1]  For ease of reference, where appropriate, we refer to the youngest three children collectively as "the younger children."

2

between parents and the three younger children, finding by clear and convincing evidence that continued contact would be detrimental to the children.

¶ 6.     The State moved to terminate parental rights to all four children. Following a multi-day hearing, the court concluded that there was a change of circumstances because parents' progress had stagnated. After conducting a best-interests analysis, the court terminated parental rights as to the younger children, and denied the State's termination of parental rights (TPR) petition as to the oldest.[2] Parents appealed.[3]

¶ 7.     The critical issue in this appeal is whether the trial court's decision is fatally compromised by a conflict of interest of the attorney representing the State. The facts related to this issue are as follows. Through March 2016, Attorney represented all four children. In April 2016, the juveniles were assigned a new lawyer. At a hearing on April 13, 2016, Attorney appeared in the case for the State. She presented the court with a letter signed by the juvenile's guardian ad litem consenting to her representation of the State in the case. Mother's attorney cited Vermont Rule of Professional Conduct 1.9 and raised concerns about Attorney's prior representation of the children.[4] The following exchange took place:

> [Mother's attorney]: . . . I know [Attorney] has addressed this for the Court, but on behalf of mother we do have concerns under Rule 1.9 about [Attorney's] prior representation of the juveniles, and her ability to go forward now representing the State.
>
> THE COURT: Which Rule 1.9?
>
> [Mother's attorney]: The Rules of Professional Conduct.

---

[2] Because we resolve this case on the basis of a process-related issue, we do not recount the trial court's findings and conclusions in any detail.

[3] DCF did not appeal the trial court's order declining to terminate the parents' rights as to the oldest child, so issues concerning that child are not before this Court.

[4] Vermont Rule of Professional Conduct 1.9(a) states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."

THE COURT: And that rule is what, I don't have it in front of me?

[Mother's attorney]: The duties for former clients, just that we believe it could represent a conflict with her to go forward today.

THE COURT: How so?

[Mother's attorney]: Just in that she has previously represented the children, and now she's taking a role that could potentially be adverse for the children in some manner. And we believe that—we just want to put it on the record that we have concerns about the potential for a conflict. Not that we have any indication of an actual conflict at this time, but just the potential for one.

Attorney responded that there was no conflict because the State and the juveniles had the same position on the termination petition, and if there was a conflict, the guardian ad litem could waive it. The court agreed that the juveniles and the State had the same position and further explained:

And the guardian for the children has waived any potential conflicts. So if there was going to be a conflict, it would have been with the children, who are former clients of [Attorney], not with the parents. I see no concern at all about any prejudice to the parent allowing [Attorney] to go forward representing the State, who by all reports and accounts are—is requesting the same thing as the children at this point.

¶ 8.    For the reasons below, we conclude that parents do have standing to raise the conflict-of-interest issue, that Attorney's representation of the State after representing the children did give rise to a conflict of interest, that the conflict was not effectively waived in this case, and that prejudice resulted from the conflict requiring reversal.

## I.  Standing

¶ 9.    We conclude that parents have standing to raise the issue of whether Attorney had a conflict due to prior representation of the children in this case.  To demonstrate standing to bring a claim, a litigant "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct, which is likely to be redressed by the requested relief."  Parker v. Town of Milton, 169 Vt. 74, 78, 726 A.2d 477, 480 (1998).  "The injury [alleged] must be an 'invasion of a legally protected interest,' not a generalized harm to the public."  Id. (citation omitted) (quoting

4

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Whether there is standing is a question of law we review de novo. Baird v. City of Burlington, 2016 VT 6, ¶ 11, 201 Vt. 112, 136 A.3d 223. Parents have a legally cognizable interest in their continued relationships with the younger children that is sufficiently impacted by Attorney's alleged conflicts of interest to support parents' standing to raise the issue. Our conclusion on this point is supported by Vermont law concerning appointment of counsel for parents and children in termination cases, persuasive decisions from other jurisdictions, and consideration of the State's role in abuse-and-neglect proceedings.

¶ 10.     Vermont law recognizes the importance of a parent's interest in the parental relationship, and the provision of counsel for parents and children is one way the Legislature has sought to safeguard those rights. This Court has recognized that "a parent's right to the custody, companionship, and care of his or her children is an important interest warranting due process protection." In re S.C., 2014 VT 7, ¶ 5, 195 Vt. 415, 88 A.3d 1220. Thus, parents have a strong interest in "a fair and accurate termination decision." Id. As the U.S. Supreme Court has recognized, "until the State proves parental unfitness, the child and . . . parents share a vital interest in preventing erroneous termination of their natural relationship." Santosky v. Kramer, 455 U.S. 745, 760 (1982).

¶ 11.     The provision of counsel to both parents and children is required by statute and is an important part of ensuring that termination proceedings are conducted fairly and accurately. See In re M.T., 2017 VT 104, ¶¶ 7, 11, __ Vt. __, __ A.3d __ (explaining that although statute makes appointment of counsel for parents discretionary, in practice, counsel is uniformly appointed, and that provision of counsel is essential to ensuring fair proceeding); see also 13 V.S.A. § 5232(3) (directing counsel be appointed for both parents and children in termination proceeding when "interests of justice require"); 33 V.S.A. § 5112(a) ("The Court shall appoint an attorney for a child who is a party to a proceeding brought under the juvenile judicial proceedings chapters."); V.R.F.P. 6(b) ("In proceedings under 33 V.S.A. Chapters 51, 52 and 53, the court shall

assign counsel . . . to represent the child unless counsel has been retained by that person."). The right to counsel, whether grounded in constitution or statute, contemplates an attorney without "conflicting interest or inconsistent duties." In re Darius G., 941 N.E.2d 192, 197 (Ill. App. Ct. 2010) (concluding that in juvenile proceeding statutory right to counsel violated when attorney appointed to represent party had conflicting interest). Conflicted representation of children in an abuse-and-neglect proceeding impacts parents' rights and supports their standing to raise the issue.

¶ 12. Courts in several other jurisdictions have persuasively concluded that, in the context of juvenile abuse-and-neglect proceedings, parents have standing to raise issues concerning a child's counsel, given the parents' own legally protected interests at stake in the proceeding. See In re Patricia E., 219 Cal. Rptr. 783, 785 (Ct. App. 2003) (holding that father had standing to raise issue with daughter's counsel because "independent representation of the daughter's interests impacts upon the father's interest in the parent-child relationship"), disapproved of on other grounds by In re Celine R., 71 P.3d 787 (Cal. 2003); In re Christina M., 908 A.2d 1073, 1082 (Conn. 2006) (concluding that parents' rights intertwined with those of children, and parents could raise claim regarding conflict of children's counsel); New Mexico ex rel. Children, Youth & Families Dept. v. John R., 2009-NMCA-025, ¶ 18, 203 P.3d 167 (concluding that father had standing to argue court erred in failing to appoint counsel for child in termination proceeding given possible risk of injury to his legally protected interest in right as parent); see also Wright v. Alexandria Div. of Soc. Servs., 433 S.E.2d 500, 503 (Va. Ct. App. 1993) (holding child had standing to raise issue related to effectiveness of mother's counsel).

¶ 13. Accordingly, we agree with the Supreme Court of Connecticut that parents have a "direct, personal stake in the outcome of the termination proceeding" and inadequate representation for children "could harm the [parents] because those roles help shape the court's view of the best interests of the children, which serves as the basis upon which termination of parental rights is determined." In re Christina M., 908 A.2d at 1082.

¶ 14. Finally, we note that one component of the conflict at issue, and the ensuing harm, is that Attorney's prior representation of the children in this case potentially compromises the integrity of the judicial process and Attorney's role representing the State in ways that directly impact the fairness of the proceedings for parents themselves, as well as the children. Our analysis on this point does not rest on the children's interests pursuant to Vermont Rule of Professional Conduct 1.9. As set forth more fully below, the conflict at issue is not necessarily grounded solely in Attorney's duties to the children, as her former clients. The conflict at issue here also potentially impacts Attorney's role representing the State and the proceedings more broadly. This aspect of the conflict implicates parents' interests directly, independent of its effect on the younger children, and further supports parents' standing to challenge the proceedings below on the basis of Attorney's conflict. See infra, ¶¶ 22-27.

## II. Conflict

¶ 15. Three conclusions support our holding that Attorney had a disqualifying conflict from representing the State due to her prior representation of the children.[5] First, we rely primarily, but not exclusively, on the Vermont Rules of Professional Conduct in determining whether Attorney had a conflict. Second, for purposes of the trial court's disqualification determination, we treat the potential adversity of interests that arises when an attorney who has represented the children then represents the State as disqualifying rather than conducting a case-by-case assessment of the actual material adversity between the parties' interests. And third, we conclude that wholly independent of the adversity between the children's and the State's interests, Attorney's prosecution of the State's TPR petition after her representation of the children

---

[5] We emphasize that our analysis is limited to Attorney's individual disqualification. Parents did not argue that the Attorney General's office more broadly should have been disqualified, and nothing in our analysis would support such a conclusion. Cf. State v. Miner, 128 Vt. 55, 62, 258 A.2d 815, 819 (1969) (holding that conflict of state's attorney does not bar State from performing prosecutor's function).

7

undermines the integrity of the process in a context in which the court's interest in protecting the appearance and reality of fairness to all concerned is at its highest.

¶ 16. In assessing whether Attorney was conflicted for the purposes of the TPR proceeding, we draw guidance primarily from the Vermont Rules of Professional Conduct, but are not limited to those rules as they are understood in the context of disciplinary proceedings. See, e.g., In re Vt. Elec. Power Producers, Inc., 165 Vt. 282, 293, 683 A.2d 716, 722 (1996) ("When the propriety of an attorney-client relationship involving a lawyer previously employed by a governmental agency is raised in the course of litigation, the standard of conduct set forth in . . . the Vermont Code of Professional Responsibility is a primary source for resolution of the issue." (emphasis added)); see also Amparano v. ASARCO, Inc., 93 P.3d 1086, 1092 (Ariz. Ct. App. 2004) ("[T]he rules of professional responsibility are for ethical enforcement and are not designed to be used as a means to disqualify counsel. The courts have, of course, looked to the ethical rules for guidance on disqualification issues."); Black v. State, 492 F. Supp. 848, 861 (W.D. Mo. 1980) (explaining that in deciding motion to disqualify, ethical rules "must be given considerable weight" but "should not be applied inflexibly or without consideration of realities of which fair decision would call for judicial notice" (quotation omitted)); In re Jalicia G., 971 N.Y.S.2d 831, 839 (Fam. Ct. 2013) ("The ethical rules provide guidance, and they are the body of law on which bar authorities base disciplinary decisions, but they are not mandates on how courts should handle live litigation."). Accordingly, we draw guidance primarily from the Vermont Rules of Professional Conduct, but in reviewing the trial court's ruling on the disqualification motion, we may bring to bear considerations beyond those applicable in a disciplinary proceeding, and we are not bound by the requirements of those rules in the disciplinary context.[6]

---

[6] For this reason, our conclusion that the trial court erred in declining to disqualify Attorney does not mean that Attorney has violated the Rules of Professional Conduct or should be subject to discipline for an ethics violation.

¶ 17.    We decline to parse the State's and the children's specific positions in this case to evaluate whether they are actually materially adverse because we conclude as a matter of law that representation of children in abuse-and-neglect proceedings conflicts with subsequent representation of the State.  The Rule of Professional Conduct from which we draw the most substantial guidance is Rule 1.9(a), which states that a lawyer may not represent another person "in the same or a substantially related matter" where "that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  There is no question here that Attorney was representing a different client (the State) in the same case in which she previously represented the children.  For several reasons, we reject the State's argument that the children and State had interests that were not "materially adverse" because the children and the State both supported termination of parental rights.  As set forth below, given the myriad issues in play in juvenile proceedings, the potentially dynamic nature of the parties' positions, and the difficulty in discerning the children's interests, determining whether the parties' interests are truly aligned is a potentially complex undertaking.  For that reason, in this context we decline to leave the disqualification question in this context to case-by-case determination, and instead conclude as a matter of law that the potential conflict inherent in representing different clients in the same matter should be treated as an actual conflict for the purposes of determining whether counsel in an abuse-and-neglect case should be disqualified from subsequent representation of a different party in that same matter.

¶ 18.    First, a host of issues arise in abuse-and-neglect proceedings, and any divergence in the positions of the State and the children on any matter can create material adversity.  The parties in an abuse-and-neglect proceeding have separate interests and positions as to the proper placement of children during the course of the proceeding, each of the myriad requirements of the case plan, and the frequency, time, and place of parent-child contact.  These are complex questions that can yield varied positions across a spectrum.  A TPR hearing may present the strongest case

9

for ascertaining alignment of interests because it apparently presents a binary choice—terminate or not. But in any given case, a range of final dispositions other than termination is potentially available, and the possibility of a negotiated resolution, including a post-adoption contact agreement, is always on the table. Moreover, advocating an established position in a contested hearing is only one of many duties of a lawyer, whether representing the State, a parent, or a child. Counsel's advice plays an important role in shaping a client's position, and counsel are often involved in discussions and planning, including ongoing give-and-take with other parties. This advice and advocacy outside of the courtroom help shape the course of the litigation itself. See, e.g., In re Darius G., 941 N.E.2d at 200 (noting that the attorney's "limited activity on the record is not dispositive" because "[i]t is the off-the-record conduct that would have impacted [counsel's] decisions to act as he did on the record"). Determining whether parties' interests are aligned such that the subsequent representation of a different party creates a conflict is not, in general, a straightforward analysis in an abuse-and-neglect case.

¶ 19.    Second, the parties' positions in these cases are often dynamic. The State, parents, and children—as well as their guardians ad litem—do not necessarily have static positions through a abuse-and-neglect proceeding. Their viewpoints can develop over time in ways that are not predictable because the proceedings are shaped by unfolding events, parents' progress, the status of foster placements, and the children's evolving best interests in light of these considerations. Even in the context of a TPR proceeding itself, alignment of positions at one moment does not necessarily predict concurrence throughout. In these cases, the court typically does not ask the guardian ad litem (as distinguished from the child's counsel) to state a position until the close of evidence. In this context, the State's position—that the potentially conflicting representation can continue until an actual divergence in interests becomes apparent—gives rise to unnecessary risk of disruption and delays in the abuse-and-neglect proceeding with minimal potentially countervailing benefits. See In re Paul L.F., 947 N.E.2d 805, 808 (Ill. App. Ct. 2011) (explaining

that per se rule makes waste less likely to occur because if one waits until after actual conflict appears there will be initial hearing, appointment of new counsel, and new termination hearing).

¶ 20.    Third, it can be challenging to discern the interests and positions of the parties in juvenile proceedings.  Children may be too young or incapable of expressing their views on important issues.  For this reason, children in juvenile proceedings are appointed a guardian ad litem and an attorney to assist in representing their interests.  The guardian ad litem's role is to protect the interests of the child.  V.R.F.P. 6(e)(1) ("The guardian ad litem shall act as an independent parental advisor and advocate whose goal shall be to safeguard the ward's best interest and rights.").  The guardian ad litem is not required to agree with the child's point of view.  In re D.B., 155 Vt. 580, 585, 587 A.2d 966, 969 (1991).  "Rather, it is the guardian ad litem's duty to stand in the shoes of the child and to weigh the factors as the child would weigh them if [the child's] judgment were mature and [the child] was not of tender years."  Id. (quotation and alterations omitted).  Moreover, the juvenile's guardian ad litem and the juvenile's attorney may not always agree on what action is in the juvenile's best interests.  Id. (explaining that guardian ad litem must exercise independent judgment and may have view different from juvenile's attorney).  For these reasons, ascertaining the juvenile's "interests" for the purpose of assessing material adversity with the State's position is a complex and problematic undertaking.

¶ 21.    In the face of these challenges, a legal presumption of conflict, rather than a case-by-case analysis, provides a straightforward rule for attorneys and courts to apply.  "[A] clear rule will inform the trial court not to accept an appearance from an attorney who already, at some point during the proceedings, appeared on behalf of another party."  In re Darius G., 941 N.E.2d at 201.  We recognize that our application of Rule 1.9(a) in the context of a motion to disqualify counsel in an abuse-and-neglect proceeding is broader than the strict requirements of the ethical rule as applied in disciplinary proceedings but, for the reasons set forth above, conclude that such extension is warranted.

¶ 22. Finally, wholly apart from our extension of the principles of Rule 1.9 and the presumed adversity in this context between the children's, the parents', and the State's interests, we conclude that Attorney's prosecution of the State's TPR petition after her representation of the children undermines the integrity of the judicial process in a particularly sensitive context without sufficient justification. Such representation creates an appearance of impropriety and may be inconsistent with the lawyer's role as a representative of the State—factors that are particularly significant in the context of abuse-and-neglect proceedings.

¶ 23. In explaining that an attorney cannot, in the capacity of prosecutor, prosecute a former client in connection with a matter that is substantially related to the former representation, even in the absence of any evidence that the prosecutor recollected the prior representation or used confidences obtained therein, we recognized that "the integrity of the legal process . . . suffers as much from the appearance as the substance of impropriety." State v. Crepeault, 167 Vt. 209, 218, 704 A.2d 778, 784 (1997).[7] Although courts have generally rejected the argument that an appearance of impropriety, standing alone, is a sufficient ground for disqualification of an attorney on the basis of prior representation of a different party, the primary reason for this reluctance is a recognition that the current client has an offsetting interest in choice of counsel and avoiding the loss of time and money in securing new counsel. This counterbalancing consideration is weaker when the current client is the State, which has greater flexibility in choosing counsel to represent the State in these proceedings.

¶ 24. Moreover, the loyalty counsel owes to prior clients may undermine counsel's role as the State's representative in these cases. By way of analogy, we have noted that the duty of a prosecutor "is not to convict but to see that justice is done." State v. Webster, 2017 VT 98, ¶ 26,

---

[7] Although the Rules of Professional Conduct "do not expressly state that a lawyer should avoid the appearance of impropriety," we have recognized that the concept "pervades the Rules and embodies their spirit." Stowell v. Bennett, 169 Vt. 630, 631, 739 A.2d 1210, 1212 (1999) (quotation omitted).

__ Vt. __, __ A.3d __. So, too, the duty of the Attorney General or a state's attorney in advising and representing the State in abuse-and-neglect cases is not necessarily to achieve termination of parental rights in a given case. Rather, their duty is to advise and represent the State in an effort to advance the best interests of the children in a way that is fair and just to all concerned. For similar reasons, some courts have disqualified attorneys who previously represented another party in a related matter from litigating against individuals they did not represent.

¶ 25. For example, in Townsend v. Townsend, the South Carolina Supreme Court concluded that a lawyer who served as guardian ad litem to the children in a custody action could not subsequently represent the father in a proceeding to reduce his child support. 474 S.E.2d 424 (S.C. 1996). The court concluded that the two matters were substantially related; that despite the lawyer's contention that he did not use any of the same information in the two matters, there was a risk that information he gained during the custody matter might prove relevant to the child support claim; and that removing the lawyer from representing the father in the child support matter was necessary to "ensure the integrity of the proceedings." Id. at 429-30.

¶ 26. Similarly, a New York appeals court pointed to "the appearance of impropriety and the risk of prejudice attendant on abuse of confidence, however slight," in disqualifying an attorney who appeared for the prosecution at sentencing because that lawyer had previously represented a codefendant in the same matter. People v. Tessitore, 577 N.Y.S.2d 680, 682 (App. Div. 1991) (quotation omitted) (remanding case for resentencing).

¶ 27. These considerations may arise in a number of contexts, but are particularly significant in abuse-and-neglect proceedings. The U.S. Supreme Court has recognized that "the child and his parents share a vital interest in preventing erroneous termination of their natural relationship." Santosky, 455 U.S. at 760 (holding that due process requires that State support its allegations by at least "clear and convincing" evidence before state may sever parental rights). Consistent with this recognition, the Legislature has specifically directed that juvenile proceedings

13

must be conducted in a manner that ensures both that there is "safety and timely permanency for children" and that there is "a fair hearing, and that [the parties'] constitutional and other legal rights are recognized and enforced." 33 V.S.A. § 5101(a)(4), (6). In this setting, we are particularly concerned that an avoidable appearance of impropriety, and questions about the role of the State's counsel, not be allowed to undermine confidence in the judicial process by the parties to the proceeding and the public more generally. This rationale provides an independent basis for our decision in this case.

### III. Waiver

¶ 28. Because we conclude that the disqualifying conflict in this case does not arise exclusively from concerns about Attorney's duties to children, as former clients, but also impacts the integrity of the process as it directly relates to parents, the State's argument that the children, through their guardian ad litem, effectively waived the conflict does not meet the full scope of our analysis. For the reasons set forth above, supra, ¶¶ 22-27, the nature of this conflict is such that the consent of all of the parties—the children and both parents—was required before the court could proceed. There is no indication in the record that either parent consented to Attorney's representation of the State. Accordingly, the conflict was not waived.

¶ 29. Whether and how the children, for their part, may waive such a conflict presents thorny questions. Under the ethics rule from which we draw guidance, waiver of a conflict requires informed consent, confirmed in writing. See V.R.Pr.C. 1.9(a) (directing that lawyer who has represented person may not represent different person in same matter "unless the former client gives informed consent, confirmed in writing."). "Informed consent" demands that the person waiving the conflict has "adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." V.R.Pr.C. 1.0(e). We need not definitively resolve this question here because we conclude that the parents did not waive the

14

conflict. The record in this case, however, prompts us to make two observations about the authority of the guardian ad litem to waive conflicts on behalf of the children.

¶ 30. First, any compromise, stipulation, waiver of privileges, settlement, or other decision affecting the substantial rights or interests of the minor child must be reviewed by the court. V.R.F.P. 6(d)(1). No purported waiver on behalf of the child is effective without judicial review and approval. In this case, although the court briefly considered the question in the context of an in-court objection to Attorney's representation, the purported waiver was not submitted to the court, the court entertained no evidence, and the court's determination was based solely on its conclusion that the guardian ad litem's position as to termination was the same as the State's. If this case turned on the effectiveness of the children's waiver, this level of judicial oversight of the agreement and findings to support the purported waiver would be inadequate.

¶ 31. Second, a minor's attorney is an essential participant in the decision to waive a conflict, and is the professional who communicates that decision to the Court. Rule 6 of the Vermont Rules for Family Proceedings expressly addresses circumstances in which the minor child and guardian ad litem disagree as to any settlement, compromise, waiver of privileges, or other decisions affecting substantial rights of the minor. V.R.F.P. 6(d)(2). The rule requires that in the event of a disagreement between the minor and the guardian ad litem, the minor's attorney "shall promptly and fully inform the court of the position of the guardian ad litem," and "[t]he guardian ad litem shall also be afforded the right to be heard." Id. This rule makes it clear that the guardian ad litem may not operate independent of the child's counsel in effecting stipulations or entering into agreements that purport to bind the child. The guardian ad litem may make an independent assessment of the child's best interests, may advocate for a position—to the State, the child's counsel, and the court—and is entitled to be heard by the court. See V.R.F.P. 6(e)(1) ("The guardian ad litem shall act as an independent parental advisor and advocate whose goal shall be to safeguard the ward's best interest and rights."). But nothing in the rule confers upon the guardian

15

ad litem the authority to independently enter into binding compromises, settlements, or waivers affecting the minors' substantial rights or interests. To the extent that the claim here is that the children waived the conflict because their guardian ad litem agreed to a waiver, we would not sustain the State's position. If anyone is authorized to make such a waiver it is the children's lawyer, with or without the agreement of the guardian ad litem, V.R.F.P. 6(d)(2), and subject to review by the court, V.R.F.P. 6(d)(1).[8]

## IV. Prejudice

¶ 32. We reject the State's contention that even if there was a conflict, and even if the conflict was not properly waived, reversal is not required in this case because any conflict did not prejudice the outcome of the proceeding. It is difficult to see how "prejudice" would be defined in this setting, and how the court would ascertain its existence or absence. To the extent that our analysis hinges on the integrity of the judicial process, the prejudice arising from Attorney's conflict is implicit in our analysis.

¶ 33. The Illinois Court of Appeals was faced with a similar question in In re Darius G., in a proceeding to terminate parental rights. 941 N.E.2d at 192. In that case, the same public defender appeared on the mother's behalf at one hearing and then subsequently appeared on behalf of the juvenile. The court concluded that the subsequent representation created a per se conflict

---

[8] We do not address whether the waiver of such a conflict is sufficiently analogous to an admission, the waiver of a constitutional right of the minor, or waiver of the patient's privilege to require that the court make the specific findings set forth in Rule 6 before approving such a waiver. See V.R.F.P. 6(d)(3) (requiring in certain cases that trial court find, after opportunity for hearing, "(A) that there is a factual and legal basis for the waiver or admission; (B) that the attorney has investigated the relevant facts and law, consulted with the client and guardian ad litem, and the guardian ad litem has consulted with the ward; (C) that the waiver or admission is in the best interest of the ward; and (D) that the waiver or admission is being entered knowingly and voluntarily" by the guardian ad litem, and in some cases the minor child). Given the concerns we have expressed above, and the procedural hurdles the State must overcome before it can proceed with otherwise-conflicted counsel, we doubt that the State will in the future conclude that it is worthwhile to seek waivers of counsels' conflicts in such circumstances. However, we have not ruled out the possibility altogether, recognizing that exceptional circumstances we have not considered may arise, such that the State's interest in proceeding with counsel of its choice warrants the judicial and extrajudicial process required to do so.

16

of interest, that the mother had not waived the conflict, and that prejudice could be presumed. The court endorsed a "presumption that the circumstances themselves impair the attorney's ability to represent the first client, and the later client, with undivided loyalty." Id. at 199. The court found that this was important because "it would be impossible for the respondent to establish the prejudice, either because the prejudice does not appear in the record (e.g., less aggressive tactics used to defend than otherwise would have been used) or even because the impact on the attorney was subconscious (e.g., subconscious reluctance to attack pleadings)." Id.; see also In re Paul L.F., 947 N.E.2d at 808 (identifying numerous unanswerable questions that would arise if issue of prejudice in this setting were subject to hearing rather than presumed); T.W. v. Cabinet for Health & Family Servs., 484 S.W.3d 302, 306 (Ky. Ct. App. 2016) (concluding that where attorney in TPR case had actual conflict of interest prejudice was presumed, requiring reversal of termination decision).

¶ 34. Combined with this practical difficulty in measuring prejudice are the strong interests that are stake in termination proceedings:

> Because a judgment to terminate parental rights is irrevocable, justice requires that a trial adjudicating this issue be able to withstand considerable scrutiny. Although the record before us reveals that in a new trial the evidence may justify termination of the appellant's parental rights, the conflict of interests issue in this trial casts a grave shadow over the fairness of the judicial process employed to reach that important decision.

Howard v. Texas Dep't of Human Servs., 791 S.W.2d 313, 316 (Tex. Ct. App. 1990); cf. In re J.J.P., 168 Vt. 143, 719 A.2d 394 (1998) (holding that DCF's attorney's conflict at merits stage in juvenile proceeding cured by order precluding state from relying at termination on findings and conclusions in merits decision).

¶ 35.    For the above reasons, we conclude that the conflict of interest in this case requires reversal of the termination proceeding.[9]  We therefore remand for a new termination hearing.[10]

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice

---

[9]  As an alternate ground for reversal, parents argue that there as a conflict with the new lawyer assigned to represent the children because there was a conflict in goals and interests among the children.  We need not reach this issue because we reverse and remand on other grounds.  We note, however, that one attorney may represent more than one child in a juvenile proceeding and will not be disqualified unless an actual conflict arises.  See In re Jasmine S., 63 Cal. Rptr. 3d 593, 600 (Ct. App. 2007) (explaining that in dependency proceedings attorney representing multiple siblings will be disqualified "only if the circumstances present an actual conflict—a mere potential conflict is insufficient to warrant disqualification").

[10]  Nothing about our decision should be construed to preclude the parties from stipulating on remand to admission in the new TPR hearing of parts or all of the transcripts from the prior TPR hearing.