NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 56

No. 2017-402

| | |
|---|---|
| Nicola Weaver | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Family Division |
| | |
| David Weaver | April Term, 2018 |

Helen M. Toor, J.

Nicola Weaver, Pro Se, North Ferrisburgh, Plaintiff-Appellant.

Wanda Otero-Weaver, Lincoln, for Defendant-Appellee.

PRESENT: Reiber, C.J., Skoglund, Eaton and Carroll, JJ., and Grearson, Supr. J., Specially Assigned

¶ 1.    **SKOGLUND, J.**    Mother appeals an order of the family court holding her in contempt for willful failure to comply with a ruling that placed the parties' minor son in his father's physical custody and temporarily suspended mother's contact with the child. We affirm the contempt order, but remand the matter for the family court to consider whether father's attorney, who is also his wife, should be disqualified from further representing father in this case.

¶ 2.    In May 2017, the court temporarily suspended all contact between mother and the parties' son N.W., who was then sixteen years old, after mother repeatedly violated prior parent-child contact orders issued by the court that gave father legal and physical rights and responsibilities for N.W.[1] Despite the order, N.W. remained at mother's home. Father moved to

---

[1] We recently affirmed the May 2017 order in Weaver v. Weaver, 2018 VT 38, __Vt.__, __A.3d__. A detailed history of the parties' custody dispute is set forth in that decision.

hold mother in contempt. See 15 V.S.A. § 603(a); Wells v. Wells, 150 Vt. 1, 6, 549 A.2d 1039, 1043 (1988) (noting "obstruction of court-ordered visitation can be redressed by means of contempt proceedings"). Following a hearing, the court found mother in contempt for willfully failing to comply with the May 2017 order. It ordered mother to pay $100 for each day that N.W. remained at mother's home after October 31, 2017. The court stated that the fine was intended to compensate father for lost contact with his son. It therefore permitted father to deduct any fines incurred from his maintenance payments to mother.[2] Mother appealed.

¶ 3.    We review an order of contempt solely for abuse of discretion. Hunt v. Hunt, 162 Vt. 423, 436, 648 A.2d 843, 853 (1994). We find none here. The family court found by clear and convincing evidence that mother had willfully violated the May 2017 order by failing to do anything to ensure that N.W. lived with father. Instead of complying with the order, she wrote to the parties' three older sons to ask them to intervene in the dispute, telling them that father was trying to make them homeless, lying about her in court, and bullying and abusing N.W. She also attempted to sign school forms for N.W. that she had no right to sign, threatened to ruin the reputations of father and his wife in the community, told father to "enjoy your piece of paper" when the May 2017 order was issued, and said that he would never come between her and her sons. Although mother wrote to father that she could not force N.W. to go to father's and that she was going to call the police to have them take N.W. to father's home, there was no evidence that she ever did so. The court found that she was "merely making a record and bluffing." The record supports these findings, and the findings in turn support the court's conclusion that mother

---

[2] The amount of father's maintenance obligation has been the subject of three prior appeals to this Court. Weaver v. Weaver, No. 2017-414, 2013 WL 2106377 (Vt. May 4, 2018) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo17-414.pdf [https://perma.cc/9GHU-MRKA]; Weaver v. Weaver, 2017 VT 58, __Vt.__, 171 A.3d 374; Weaver v. Weaver, No. 2015-326, 2016 WL 562907 (Vt. Feb. 11, 2016) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo15-326.pdf [https://perma.cc/V3TB-NBCH].

willfully violated the parent-child contact order.[3]  See 15 V.S.A. § 603(f)(3) (providing that violation of court order is willful if person "had the ability to comply with the order and failed to do so").

¶ 4.    Moreover, the court did not exceed its discretion by ordering mother to pay a compensatory fine to father.  Such a sanction is expressly permitted by law.  See V.R.F.P. 16(c)(3) (providing that person found in contempt may be ordered to pay fine to aggrieved party to compensate for loss or injury caused by contemnor).  While "purely prospective fines are not favored in Vermont," we have upheld the imposition of prospective civil contempt fines when necessary to compensate complainants or as a coercive sanction.  Vt. Women's Health Ctr. v. Operation Rescue, 159 Vt. 141, 151, 617 A.2d 411, 417 (1992).  The record supports the family court's determination that prospective fines were warranted by the "extreme and extraordinary" circumstances of this case, namely, mother's continual and unrepentant disregard of the court's custody orders and by extension, her son's best interests, and the resulting harm to father's relationship with N.W.  The sanction was not impermissibly punitive because mother could avoid the fines by complying with the May 2017 order and returning N.W. to his father.  See DeGrace v. DeGrace, 147 Vt. 466, 471, 520 A.2d 987, 991 (1986) (affirming $10,000 fine imposed by court for father's contempt in interfering with visitation rights; fine was not punitive sanction because it was reducible to judgment only if father failed to comply with visitation rights in future).  Nor was

---

[3] We do not find Hancock v. Hancock, 471 S.E.2d 415, 420 (N.C. Ct. App. 1996), the case cited by mother in her brief, to be persuasive.  In Hancock, North Carolina's intermediate appellate court reversed a trial court decision holding a mother in contempt for interfering with the father's visitation with the parties' minor child because the evidence showed that the mother had prepared the child to go, encouraged the child to visit his father, and told him that he had to go, but the child "simply refused."  Id. at 419.  The court held that the mother's actions did not rise to the level of willful contempt of the visitation order where she "did everything possible short of using physical force or a threat of punishment to make the child go with his father."  Id.  Here, by contrast, there was no evidence of any efforts by mother to get N.W. to comply with the parent-child contact schedule.  Rather, mother has repeatedly told her children that father is trying to make them homeless and that he only sought custody of N.W. to reduce his child support obligations and to get tax deductions.  Having deliberately alienated N.W. from father, she cannot now use N.W.'s alleged refusal to see father as a shield in this contempt proceeding.

it improper for the court to order that any fines accrued by mother be offset from father's maintenance obligation; the court has discretion to impose the equitable remedy of setoff in such situations. See Schwartz v. Haas, 169 Vt. 612, 739 A.2d 1188, 1191 (1999) (mem.) (holding that family court appropriately ordered $50,000 sum owed by wife for wrongfully diverting assets from marital estate to be offset from husband's maintenance obligation in order to avoid multiplicity of actions); cf. Weaver, 2017 VT 58, ¶ 42 (holding that family court may not offset maintenance overpayment against either past or future child support obligations).

¶ 5. While we affirm the contempt ruling, we remand the matter for the family court to consider whether father's wife should be disqualified from further representing him in this case because her continued involvement may run afoul of at least two ethical rules.[4] Under Vermont Rule of Professional Conduct 3.7, a lawyer is generally prohibited from acting "as advocate at a trial in which the lawyer is likely to be a necessary witness." V.R.Pr.C. 3.7(a); Lumbra v. Lumbra, 136 Vt. 529, 533, 394 A.2d 1139, 1142 (1978) ("A lawyer is prevented by ethical considerations from testifying in his client's cause."); see also Kennedy v. Eldridge, 135 Cal. Rptr. 3d 545, 555 (Ct. App. 2011) (affirming trial court's disqualification of paternal grandfather, an attorney, from representing father in child custody proceedings against mother where grandfather was likely to be fact witness). The record shows that father's attorney is intimately involved in the parties' dispute, raising the question of whether she has crossed the line from advocacy to testimony in

---

[4] Mother, who is not represented by counsel, has not filed a formal motion to disqualify father's attorney. However, mother has repeatedly asserted that father's attorney has a conflict of interest because she is N.W.'s stepmother. We expressed our concern with the situation in a previous decision. See Weaver, 2018 VT 38, ¶ 4 n.2. Having reviewed the record for a second time, we find it necessary to direct the trial court to address the issue.

We also note that while courts are guided by the Vermont Rules of Professional Conduct in considering disqualification questions, courts may "bring to bear considerations beyond those applicable in a disciplinary proceeding, and . . . are not bound by the requirements of those rules in the disciplinary context." In re L.H., 2018 VT 4, ¶ 16, __Vt.__, __A.3d__. Thus, the fact that disqualification of father's attorney may be required does not automatically mean that the attorney has violated the Rules of Professional Conduct or should be subject to discipline for an ethics violation. See id. ¶ 16 n.6.

some of her written and oral statements to the family court. Furthermore, Rule 1.8 prohibits an attorney from acquiring a proprietary interest in the cause of action. See V.R.Pr.C. 1.8(i) ("A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . ."). Mother has argued, not unreasonably, that father's attorney has a direct financial interest in the outcome of the parties' disputes over custody and maintenance because it will affect her household income. See Weaver, 2017 VT 58, ¶ 36 (holding that trial court erred by preventing mother from discovering father's wife's income where father and wife lived together and shared household expenses because information was plainly relevant to father's ability to pay maintenance); Attorney Grievance Comm'n of Md. v. O'Leary, 69 A.3d 1121, 1134 (Md. 2013) (disbarring attorney for, inter alia, violating Rule 1.8(i) by representing husband in divorce proceeding where attorney had proprietary interest in amount of husband's child support obligation because she and husband shared all household expenses including payment of support).

¶ 6. Although the record raises concerns about father's wife's representation of him, we decline to decide the issue for the first time on appeal. As we have recognized in the past, disqualification questions are inherently fact-specific, and further development of the record may be necessary. See Cody v. Cody, 2005 VT 116, ¶ 16, 179 Vt. 90, 889 A.2d 733. We therefore remand the matter to the trial court for it to consider, after giving the parties an opportunity to address the issue, whether to exercise its discretion to disqualify father's attorney.

The family court's October 24, 2017 order holding mother in contempt is affirmed, and the matter is remanded for the court to consider whether father's attorney should be disqualified from representing father in this proceeding.

FOR THE COURT:

_____
Associate Justice

5