VERMONT SUPREME COURT

109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case Nos.     23-AP-227 &
              23-AP-240



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JANUARY TERM,   2024

| | |
|---|---|
| In re W.B., L.B., S.B., J.B., Juveniles<br>(C.B., Father\* & S.C., Mother\*) | APPEALED FROM:<br><br>Family Division<br>Superior Court, Franklin Unit<br><br>CASE NOS. 252-10-19, 253-10-19,<br>254-10-19 & 255-10-19 Frjv |
| In re G.C., Juveniles<br>(S.C., Mother\*) | CASE NO. 256-10-19 Frjv |

Trial Judge: Howard E. Van Benthuysen

In the above-entitled causes, the Clerk will enter:

Mother and father appeal termination of their parental rights to L.B., W.B., S.B., and J.B., born in March 2017, May 2015, April 2010, and October 2007, respectively.  Mother also appeals termination of her parental rights to G.C., born in March 2014.[1]  On appeal, parents both argue that the children's attorney had a conflict of interest that prevented the attorney from adequately representing all the children at the same time and the court erred in denying their requests to depose the children and to have them testify.  Father argues that some findings were not supported because they rely solely on hearsay statements by the children.  Mother argues that not all findings are supported by the evidence, and it was not in the children's best interests to have mother's rights terminated where they have a loving relationship with her.  We affirm.

The Department for Children and Families (DCF) became involved with the family due to concerns about drug use.  In October 2019, the State filed a petition alleging the children were in need of care or supervision (CHINS) because they were without proper parental care due to

---

[1]  G.C.'s father did not seek custody, advocating for mother to have custody of the children.  He did not attend the termination hearing and did not appeal termination of his parental rights.

parents' substance abuse, the exposure to substances, domestic violence, and lack of adequate supervision for the children. Mother and father were in a relationship but were not regularly living together. Mother, who had primary custody of the children, stipulated to the merits of the petition. The goal was reunification and the children were initially placed with mother under a conditional custody order (CCO), but were subsequently removed due to her failure to supervise the children, her positive drug screening, and father's use of alcohol and behavioral problems. There were subsequent attempts to place the children with mother, but these were unsuccessful for similar reasons. The reunification attempts with mother negatively impacted the children.

The court found that father engaged in abuse and domestic violence against mother, some of which was witnessed by the children and that father lacked insight into how this negatively affected the children. Father did not complete the goals of the case plan. He did not complete recommended domestic-violence programming, did not regularly attend treatment, continued to struggle with alcohol abuse, did not engage in mental-health treatment, and did not provide releases for DCF. Father lacked stable housing. During the case, he stayed at mother's house in violation of the case plan. He did not believe an allegation that his father sexually assaulted G.C. and brought the children to his father's house despite DCF's prohibition against it.

Mother struggled with alcohol and drug addiction and admitted to using crack cocaine during the pendency of the case. Mother completed some of the case-plan goals, including completing a domestic-violence assessment and engaging at times in medically assisted treatment. However, she did not meet other key goals. Mother did not consistently engage in mental-health treatment, had numerous drug relapses, tested positive for unprescribed substances, and was unable to maintain sobriety. Mother had stable housing until the time of the final hearing, but subsequently lost her housing. She was unemployed. Although mother attended parent-child contact, she was impaired at times and did not move beyond supervised contact due to concerns about her relapses. Mother was often late to visits and this upset the children.

By the time of the final hearing, all children were in pre-adoptive placements. J.B. W.B., and S.B. were placed with their maternal grandmother. They were doing well in grandmother's care. They had a routine and regularly attended school and medical and counseling appointments. L.B. was placed with a foster family where she has lived since May 2020, except for periods totaling less than six months when there was attempted reunifications with mother. L.B. developed a loving relationship with her foster parents and improved in her development and social skills. G.C. had several foster placements and exhibited sexualized behaviors. By the time of the final hearing, she had settled into a foster family that intended to adopt her and she was receiving counseling.

In September 2022, the State filed petitions to terminate parental rights. Parents moved several times to have the children testify. The court denied the requests, finding that the evidence parents sought could be presented through other witnesses and the negative impact on the children outweighed the probative value of the children's testimony.

Following an evidentiary hearing over several days, the court found that there was a change of circumstances due to parents' stagnation. Mother did not address the key issues of substance abuse, domestic violence, lack of proper supervision, and control of inappropriate partners around the children. Mother continued to struggle with substance abuse and did not maintain consistent medically assisted treatment or substance-abuse counseling. Mother was involved with partners who were violent and exposed the children to domestic violence. Mother

did not consistently or satisfactorily engage in mental-health counseling. Mother did not keep her releases current and did not consistently cooperate with drug testing. Mother was unemployed and lost her housing. Father also struggled to maintain sobriety. He continued to use alcohol and tested positive for nonprescribed substances. He allowed releases to lapse and did not provide all required drug tests. He lacked stable housing.

The court further found that termination was in the children's best interests. The children were well adjusted to their foster homes and had positive relationships with their foster families and communities. Parents would not be able to resume parenting in a reasonable time as measured from the needs of the children. Father indicated he did not want custody of the children and sought to have the children returned to mother so he could visit in her home. In any event, he had not fulfilled the most important parts of the case plan reunification goals and was not able to resume parental duties in a reasonable time. In the three years the children were in custody, there were multiple unsuccessful attempts at reunification with mother. Mother did not progress on key case-plan goals. She did not maintain sobriety and did not participate mental-health counseling. Parents lacked suitable and stable housing. The children were in custody for over two years and further delays were not in their best interests. Therefore, the court granted termination of parental rights. Mother and father appeal.

When termination is sought after initial disposition, as in this case, the family court must conduct a two-step analysis. It must first consider if there was a change of circumstances and second whether termination is in the child's best interests. In re K.F., 2004 VT 40, ¶ 8, 176 Vt. 636 (mem.); see 33 V.S.A. § 5113(b) (requiring change of circumstances to modify existing disposition order); 33 V.S.A. § 5114(a) (listing factors to determine best interests of child). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.). "Our role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating . . . parental rights." In re S.B., 174 Vt. 427, 429 (2002) (mem.).

We first address parents' joint argument alleging that the children's attorney had a conflict of interest. On the first day of the termination hearing, the court was discussing the status of exhibits with the parties and mother's attorney indicated that there was a letter from S.B. indicating that she did not want to be adopted and wished to return home to her mother. Mother's attorney also stated that G.C. was not in a pre-adoptive home. Mother's attorney stated that the children's different placements and desires called into question "the ability of one attorney to represent five juveniles." There followed a discussion between the court and the attorneys regarding admission of the letter and parents' request for the children to testify regarding their wishes. During the discussion, the children's attorney stated that she had spoken to each child and noted that although the children wanted contact, they did not wish to live permanently with mother and father. At no time did either parent move to disqualify children's attorney or ask for appointment of new counsel.

On appeal, parents argue that the children's attorney had an obvious and unresolved conflict of interest that prevented the attorney from adequately representing all the children at the same time. Father alleges that some children wanted contact with parents and that the attorney erred in advocating for an outcome contrary to those children's wishes.

"[O]ne attorney may represent more than one child in a juvenile proceeding and will not be disqualified unless an actual conflict arises." In re L.H., 2018 VT 4, ¶ 35 n.9, 206 Vt. 596.

3

An actual conflict occurs when "an attorney's professional judgment for one client necessarily will be affected adversely because of the interests of another client." In re Jasmine S., 63 Cal. Rptr. 3d 593, 601 n.6 (Cal. Ct. App. 2007) (quotation omitted).

Parents did not properly preserve the argument they now raise on appeal. See In re C.H., 170 Vt. 603, 604 (2000) (mem.) (explaining that parent must raise issue in family court to preserve it for appeal). Because neither parent alleged an actual conflict or moved to disqualify counsel, there was no opportunity for the other parties to respond or for the court to evaluate the merits of parents' argument. Mother's vague statement at the hearing was not sufficient to preserve this issue, especially because it came before the children's attorney explained the attorney's interactions with each child and the children's responses. See In re A.M., 2015 VT 109, ¶ 28, 200 Vt. 189 (explaining that preservation requires presenting argument with "specificity and clarity" so that trial court has "fair opportunity to rule on it" (quotation omitted)). Moreover, on appeal, parents' argument is built on the assumption that some children wanted reunification with parents, which is contrary to the family court's findings. The family court found that the sentiment expressed in the letter was due to S.B.'s brief anger over her grandmother's enforcement of a rule and not a reflection of her true desire, which was to continue living with her grandmother.

Parents next raise arguments regarding the court's denial of their requests to have the children be deposed and to testify. Prior to the termination hearing, parents moved to depose the children or to subpoena them to testify. The children's attorney opposed the request. The court denied the request, finding that the negative impact on the children outweighed the probative value of their testimony. Mother and father renewed their motions during trial and the court again denied the requests.

On appeal, mother contends that the trial court abused its discretion in declining to allow the children to testify because, mother asserts, their testimony was the sole means for mother to demonstrate their love and attachment to her, which was critical to the court's best-interests analysis. In a juvenile proceeding, the court may allow deposition of a minor if it would further the purposes of the juvenile proceeding. See V.R.F.P. 2(d)(5). These purposes include providing for the "care, protection, education, and healthy mental, physical, and social development of children," preserving family and separating children only when necessary, and ensuring "safety and timely permanency for children." 33 V.S.A. § 5101. The family court acted well within its discretion here in assessing the need for the children to testify against the damage that this might cause to these young children. The court found that information regarding the children's adjustment to their foster homes, relationships with mother, and connections to the community could be assessed through the testimony of other witnesses and that the potential harm to the children outweighed any probative value of their testimony. See In re C.B., 2020 VT 80, ¶ 27, 213 Vt. 215 (noting that best interests of child should drive exercise of discretion in juvenile proceedings).

Father argues that some of the court's findings regarding domestic violence and father's substance abuse were unsupported by the record because they were based solely on the children's hearsay statements and the court refused to allow father to introduce the children's testimony in rebuttal.[2] Father claims this amounts to a denial of due process. There was no

---

[2] The court found that during one of the attempts at reunification parents left the children with their paternal grandfather even though the children were not supposed to be around him or at his house because G.C. alleged that she was sexually assaulted by her paternal grandfather.

4

denial of due process here because father was provided with notice and an opportunity to be heard. See In re C.L.S., 2021 VT 25, ¶ 19, 214 Vt. 379 (explaining that fundamental requirement of due process is opportunity to be heard in meaning time and meaningful manner). Due process does not compel the testimony of children in juvenile proceedings or confer a right of confrontation to father. See In re R.W., 2011 VT 124, ¶ 64, 191 Vt. 108 (Dooley, J., concurring) (explaining that due process is satisfied by providing notice and opportunity to be heard but parent is not conferred right to be present or to confront witnesses).

In addition, the court did not err in relying on hearsay statements. "Hearsay evidence is admissible in termination proceedings as long as it is not the sole basis for termination of parental rights." In re A.F., 160 Vt. 175, 181 (1993). The children's hearsay statements did not form the sole basis for termination of father's parental rights. The court held hearings over several days and heard from multiple witnesses. The court made extensive findings regarding father's lack of compliance with the case plan and the children's best interests. The court's decision to terminate father's parental rights was based on extensive nonhearsay evidence, including father's own testimony.

Contrary to father's assertion, the record supports the court's findings challenged by father. Evidence beyond the children's hearsay statements supported the court's findings that father was physically aggressive in front of the children and that he physically abused mother. Father himself testified that he "went at" a man with a knife and punched him in the face and two children observed this and were hurt and crying. Court records indicate that father was convicted of assaulting mother in 2012. Mother also testified concerning father's violent behavior and her past requests for abuse-prevention orders. Father also claims that the evidence does not support the court's findings that he only completed half of his urine tests and that he did not seek custody of the children. As to the urine tests, the DCF worker testified that as of the time of the final hearing father had not appeared for a urine test since September 2022. As to father's desire to have custody of the children, the court's findings accurately reflected father's position during the pendency of the case in which at no time did he seek full custody of the children. Critically, nonhearsay evidence supported the court's findings that father's progress had stagnated, and that termination was in the children's best interests, particularly that father would not be able to parent within a reasonable time. Father struggled to maintain sobriety and acknowledges that alcohol remained a problem for him. He has tested positive for nonprescribed substances. He

---

The court found that paternal grandfather exposed his penis to L.B. inappropriately. Although mother was aware of these allegations and mother knew the children were not allowed to be around him, mother left the children at grandfather's house. On appeal, father argues that the evidence does not support the court's findings that grandfather exposed himself to L.B. or that parents left the children with grandfather over the weekend because he claims these findings were based solely on L.B.'s hearsay statements. In addition to L.B.'s hearsay statements, these findings were supported by the testimony of the DCF caseworker and mother. Mother testified that she knew there were pending sexual abuse charges against grandfather and that she believed both L.B. and G.C. regarding their allegations about grandfather. The DCF case worker testified that when parents were first interviewed regarding the children being at grandfather's home, neither suggested that grandfather was not there. Weeks later, parents asserted that grandfather was not at home. The court could reasonably infer from this testimony and the hearsay statements of the children that grandfather was present during that time. In any event, this finding was not critical to the court's assessment of father's stagnation or its determination of the children's best interests.

lacked stable housing.  The children need stability, and father will not be able to parent in a reasonable time.

Finally, father also contends that his rights should not be terminated where he was not proven unfit.  He asserts that without a finding of unfitness, it was improper for the court to require him to complete action steps in the case plan.  By not raising his objection to the case-plan requirements or action steps at disposition, father has not properly preserved this argument for appeal and therefore we do not reach it on appeal.  In any event, this Court has previously rejected the argument that the State must demonstrate a parent is unfit at the time of termination.  Under the statutory scheme, "the determination of parental unfitness, which triggers the transfer of custody away from the parents, must be made at the disposition hearing." In re R.L., 148 Vt. 223, 227 (1987).

We turn to mother's arguments.  Mother contends that the record does not support the court's finding that she used crack cocaine two weeks before the May hearing.  At the termination hearing, the court had the following exchange with mother:

> THE COURT: Okay.  All right.  And I think you said that recently, within the last couple of weeks, you used some crack cocaine with some of your friends?  So is that what you would call a slip?
>
> THE WITNESS: I don't know.
>
> THE COURT: When you talked about slips earlier, was that a slip?
>
> THE WITNESS: It's a—a slip would be, like, one time.
>
> THE COURT: Okay.  So that was a slip?
>
> THE WITNESS: And then you go right back to getting clean.
>
> THE COURT: Is that what happened a couple weeks ago?
>
> THE WITNESS: I'm definitely struggling.
>
> THE COURT: I'm sorry?
>
> THE WITNESS: I'm struggling.
>
> THE COURT: Okay.  Are you struggling with alcohol more than the coke?
>
> THE WITNESS: Yes.

Mother contends that this testimony demonstrates that she did not confirm that she used cocaine two weeks prior to the hearing and therefore the court's finding is erroneous.  The court's finding that mother used crack cocaine was a reasonable inference from mother's testimony.  In any event, even if erroneous, there was ample other evidence to support the court's findings regarding mother's ongoing struggle to maintain sobriety.  See In re B.M., 165 Vt. 331, 340 (1996) (explaining that reversal of termination order not required if some findings are erroneous as long as sufficient findings exist to support court's decision).  The unchallenged evidence

indicates that mother continued to struggle with substance abuse and had not maintained sobriety for any significant period of time.

Mother also argues that it is not in the children's best interests to have mother's rights terminated where they have a loving relationship with her. Mother argues that the court's balancing of the statutory factors was incorrect and that she has a strong bond with the children and can resume parenting through a slow transition back to her home. Mother is essentially asking this Court to reassess the statutory factors. That is not the role of this Court. The family court has discretion to determine the credibility of witnesses and weigh the evidence. In re D.S., 2014 VT 38, ¶ 22. Here the court properly assessed the statutory factors. As to the most important factor—whether mother would be able to parent within a reasonable time—the court found that mother was not prepared to parent and that the children required stability. The court therefore properly concluded that termination was in the children's best interests.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice